ANNA V. CONWAY, as Administratrix, etc., Respondent, *v.* THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY, Appellant.

Defendant issued a policy of insurance upon the life of C., plaintiff's intestate, the sum insured to be paid at death, or in twenty years, if C. was then living. The policy provided that if any premium was not paid when due, and a receipt given therefor, the policy should cease, and that "no agent or other person can alter, modify or waive any of the terms or conditions." Each renewal receipt contained also a clause declaring that no agent has power to waive or postpone payment of premiums, or to accept them after due date. In an action upon the policy it appeared that the insured failed to pay a year's premium when due; he gave to defendant's general agents a six months' note for the amount, which they accepted, withholding, however, the renewal receipt. A few days before the note fell due C. wrote to the agents that he was unable to pay it, and requested its renewal; said agents replied declining to accept a note further extending the time, but stating they would hold the renewal as long as possible; that they might be required to return it any day to the home office for cancellation. The note was not paid at maturity, and shortly after the insured died. It appeared that in many cases the said agents had accepted notes for premiums, but there was no evidence that defendant knew of any such notes. It did appear that a custom had grown up in the agents' office to accept payments of premiums after they fell due, which custom had been sanctioned by defendant, but the custom only existed in cases where the insured were in good health at the time of payment. *Held*, that, conceding the custom so far inured to the benefit of the insured as to justify a holding that the extension of time granted was within the implied power of the agents,

and that they could accept payment after default, provided the conditions were not changed by an alteration in the health of the insured, this did not authorize the recovery ; that the insured, after default and until payment, took the chances of life, and of the exercise by the agents of a conditional authority.

The notice required by statute (Chap. 341, Laws of 1876, chap. 321, Laws of 1877) was served upon C. before the premium became due. *Held,* that no further notice was required.

(Argued October 24, 1893 ; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made at the May term, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

This was an action upon a policy of insurance issued by defendant on the life of William F. Conway, plaintiff's intestate.

The policy of insurance in this case was issued to the plaintiff's intestate, and was payable to his legal representatives upon his death, or in twenty years to him if then living. When three or more full years' premiums should have been paid upon it, then, upon any default thereafter occurring in the payment of any premium, the company became liable for a sum of paid-up insurance at death, or the due date of the policy, equal to as many twentieths of the amount of the policy as there should have been paid full years' premiums thereon. The policy contained provisions " that no agent or other person can alter, modify or waive any of the terms or conditions of this policy," and " that if any subsequent premium hereon be not paid when due, and a separate receipt signed by the president or secretary of this company in each case given therefor, then this policy shall cease." A clause equally restrictive upon an agent's power to waive or postpone payment of premiums, or to accept them after due date, was contained in each renewal receipt.

Four full years' premiums had been paid by the deceased upon his policy; but on October 24, 1891, when the fifth year's premium was due, he failed to pay it. For its amount

he gave to the general agents of the company his promissory note, payable six months after date, which they took, withholding, however, a renewal receipt. A few days prior to its maturity he wrote to these agents, expressing his inability to meet it, and requesting its renewal for a period of time. To this they at once replied, saying : " Your renewal has remained unpaid since October last, pending the maturity of your note, and we do not feel at liberty to accept a note extending the time any further. We will, if you so request, recall your note from the bank  *  *  *  and hold your renewal at this office as long as it may be possible to do so. You will understand that we are likely any day to be required to return it to the home office for cancellation.  *  *  *  " The note was recalled. It was not paid at maturity, and on May eighth, some days after its due date, the assured died, without a payment of the premium having been made. The company conceded its liability to the plaintiff for $\frac{4}{20}$ths of the sum insured, to wit: $1,000, and moved for such a direction to the jury, but the court granted the plaintiff's motion for the direction of a verdict for the full amount of the policy, and the judgment thereupon entered has been affirmed at the General Term.

Further facts are stated in the opinion.

*Matthew Hale* for appellant. There has been no waiver of the conditions of the policy. (*Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 278; *Messelback* v. *Norman*, 122 id. 578; *Weed* v. *L., etc., F. Ins. Co.*, 116 id. 106; *Walsh* v. *H. F. Ins. Co.*, 73 id. 10; *O'Brien* v. *P. Ins. Co.*, 137 id. 28.) The plaintiff is not aided by chapter 341, Laws of 1876, as amended by chapter 321, Laws of 1877. (*Baxter* v. *B. L. Ins. Co.*, 119 N. Y. 450; *De Frece* v. *N. L. Ins. Co.*, 136 id. 144.) The requests to charge made by the defendant should have been complied with. (*Holly* v. *M. L. Ins. Co.*, 105 N. Y. 437.)

*George B. Wellington* for respondent. The verdict stands as a general verdict rendered by the jury. (*Sutter* v. *Vanderveer*, 122 N. Y. 653; *Dillon* v. *Cockcroft*, 90 id. 649; *Provost*

v. *McEncroe*, 102 id. 650.) The general agents, M. V. B. Bull & Co., as matter of fact, had authority to extend the time for the payment of the premium. (*Norton* v. *K. L. Ins. Co.*, 96 U. S. 234; *L. Ins. Co.* v. *Eggleston*, 96 id. 572; *Messelbach* v. *Norman*, 122 id. 583.) A notice contained in a policy of a limitation put upon the power of a general agent does not limit his authority. (*Messelbach* v. *Norman*, 122 N. Y. 583; *Norton* v. *K. Ins. Co.*, 96 U. S. 234.) If the policy was in force on the day Conway died then it was not necessary that the premium should thereafter be paid or tendered. (*Baxter* v. *B. & I. Co.*, 119 N. Y. 456; *Meyer* v. *K. L. Ins. Co.*, 73 id. 516.) The agents having power to accept the note also had power to extend the time of payment of the note. The policy was in force when the plaintiff's intestate died. (Laws of 1877, chap. 321; *De Frece* v. *N. Ins. Co.*, 136 N. Y. 144.) The agreement made to accept the premium after it became due by the terms of the policy, made after the policy was issued, was valid. (*Howell* v. *K. L. Ins. Co.*, 44 N. Y. 276; *Boehen* v. *W. Ins. Co.*, 35 N. Y. 131.) The alleged words of limitation of the policy in question differ from those in the *Marvin* case, and under the authorities the plaintiff may recover without evidence of special authority conferred upon the general agents to waive forfeitures. (*Sheldon* v. *A. F. & M. Ins. Co.*, 26 N. Y. 460; *McNeilly* v. *C. L. Ins. Co.*, 66 id. 29; *Marcus* v. *L. Ins. Co.*, 68 id. 626; *Pechner* v. *P. Ins. Co.*, 65 id. 204.)

Gray, J. The evidence in this case was given by one witness, called for the plaintiff, who was the cashier and accountant in the office of the general agents, through whom this policy was issued, and the facts are not in dispute. It was thought by the learned trial judge, and it is the basis of the respondent's contention here, that the facts proved warranted an inference either that the powers of general agents were such as to authorize them to extend the time for the payment of the premium; or that there had been such knowledge and acqui-

escence on the part of their principal, the company, with respect to a general custom to extend the time for the payment of premiums, and frequently to accept notes for the amounts, and with respect to the particular extension of time in question, as to amount to a ratification of the acts of these agents in such respects. It is difficult to understand how the powers of agents could have been more restricted than they were by the provisions of this policy, or what other language could have been resorted to by the company in the endeavor to guard itself against unauthorized acts of all agents. The fact that these were general agents does not take the case out of the comprehensive language in the instrument, which denies to any agent or other person authority to alter, modify or waive any terms or conditions. Of this restriction upon the powers of all agents, the insured is deemed to have had knowledge when he accepted his policy. There is no reason for relaxing the rules of law with respect to the construction and enforcement of a contract of insurance, any more than there would be in the case of any other kind of contract, which parties have deliberately and formally executed for the purpose of defining their respective engagements and of securing the due and exact performance thereof. Whatever the disposition to strictly enforce the performance of an insurer's obligation, it must, nevertheless, be controlled by what is a just and fair construction of the contract of insurance. Exceptional cases, in which recoveries have been permitted in the face of the contract, have been where it could be shown that there had been such a usage, or a course of business, or such consent, expressed or implied, as to justify the inference that the insurer had extended the agent's authority and thus modified the restrictions contained in the policy. The insured is bound to know the measure of an agent's authority from the terms in which power has been given him, or from the instructions under which he assumes to act. His right to believe that the limitations upon the agent's authority to bind his principal have been removed is confined to such inferences as might reasonably be drawn from methods of doing business, which have,

either by their public and continuous nature, or by some particular course of dealing or conduct in his case, acquired the virtue of a usage, or the force of a consent. In the present case it appears to have been the custom in the office or these agents to accept payment of premiums after the date when they fell due. In many instances they had taken notes for their amount; but there is not the slightest evidence in this case that the company ever knew of a note being taken by their agents. There is evidence that the company knew of delays being granted to premium debtors. The practice of the agents was to enter in their report, and to remit to the company, only cash, and a premium paid in the month when due, or whenever subsequently paid, went into the report of the following month. By the form of these reports, the company might know, from the non-appearance of the item of payment of a premium, that it had not been made when due and, from its appearance in some subsequent report, that the delay in payment had been granted or condoned. With respect to the general course of business, undoubtedly, a custom had grown up in the office of these agents to accept payment of premiums after their due date. While it had the sanction of their principal, the company, it was proved that the authority in such respects was expressly limited to cases where the individual was in good health. The evidence is that the agents were not to receive a payment where the party was out of health and the renewal past due, and had never done so. While there is no evidence to show that the deceased knew of such a custom, and as to him there had been no extraordinary course of dealings whatever, previous to October, 1891, to affect in any respect his contractual relations to the company, I think this custom, which had in fact existed, so far enured to the benefit of his contract as to justify the court in holding that the extension of time granted to him was not without the implied power of the agents. But in dealing with agents, whose powers were limited, the insured was bound by the limitations, and if he has the right to rely upon some enlargement of those powers, through the

existence of some usage, that fact is relied upon to enforce the company's agreement, the limitations will merely be lifted to the extent that the evidence shows what the usage has been.

It was, therefore, fairly inferable that the agents of the defendant were at liberty, not to make any new agreement as to the time for the payment by the insured of his premium, but to accept payment of it and thus waive the right to declare a forfeiture ; provided, that at the time the conditions had not been changed by an alteration in the health of the insured. While the contract of insurance was in force, and up to the time when the insured had the right to renew it by payment of the premium in advance, the risk in the matter was on the company ; but upon failure to pay, after notice, upon the due date of the premium, the risk was on the insured that, pending the delay permitted by the agents, he might change in health, if not die, and his insurance be lost. If we might assume that, by the agents' acceptance of the note for six months, the company was bound, and that it was estopped from insisting upon a forfeiture — a proposition which I wholly doubt, in view of the lack of evidence to show that the company permitted or knew of such a practice — the assumption could not aid the plaintiff. The insured had been refused any renewal of his note by the agents, and when he thereafter failed to pay it and to take up the renewal receipt, which would continue the contract of insurance for another year, he acted upon his own risk, and it cannot possibly be said that he acted upon any contract of the company, or upon any course of dealing which would have the force of an implied agreement. When it became obligatory upon him, in order to be entitled to a renewal of the insurance agreement, to pay his premium, he knew that no agent had authority to make any new or other agreement affecting the terms of the existing policy. If he failed to make payment and elected to rely upon some custom which might operate to save the policy from forfeiture, what was the situation ? Only this, that as there had become engrafted upon the authority of the agents, by force of the company's sanction, a power to accept payment of past-due

premiums in those cases where the physical conditions of the assured were unchanged, they might subsequently be willing and able to deliver to him a renewal receipt upon his payment of the past-due premium. Assuming his knowledge of the existence of such a custom in the office, it was not a fact which so far changed the situation as to have entitled him to rest upon it with the same security as upon a new agreement with respect to the time of payment, validly made and enforcible against the company. He simply threw himself upon the chances of life and of the exercise by the agents of a conditional authority to act.

No further notice was required from the company to the deceased. The notice provided to be given by the statute as a condition of its right to declare a policy lapsed for non-payment of an annual premium was not necessary, inasmuch as it had duly given the notice before the premium became due, which the statute has provided for. The statute does not apply to this case. (Chap. 341, Laws 1876, and chap. 321, Laws 1877.)

For the reasons given, the trial judge erred in directing a verdict for the full amount claimed to be due under the policy. Upon the evidence, the company was only liable for four-twentieths of its amount; or the sum of $1,000, and interest accrued thereon.

The judgment should be reversed and a new trial ordered, with costs to abide the event; or, if the plaintiff shall stipulate that the judgment shall be reduced to the sum of $1,040, the amount conceded to be due by the defendant company, and the costs of the action to and including the trial of the issues at Circuit, the judgment may be affirmed as so modified. In such event, costs are awarded to the appellant at General Term and in this court, and are to be deducted from the judgment.

All concur, except O'BRIEN and MAYNARD, JJ., dissenting.

Judgment reversed.