LOUISA BANHOLZER v. NEW YORK LIFE INSURANCE COMPANY.

December 2, 1898.

Nos. 11,366—(103)[1] (225).[2]

**Life Insurance—Part Payment of Premium—Non-payment of Note for Balance—New York Contract—Statutory Notice of Maturity of Note not Given—Forfeiture—Waiver.**

On September 16, 1895, the defendant issued a policy of insurance on the life of plaintiff's husband, of which she was the beneficiary, the premium being payable yearly in advance. It was provided in the policy that, "if any premium is not paid on or before the day when due, this policy shall become void, and all payments previously made shall remain the property of the company"; also that the policy should be deemed a New York contract, and be construed according to the laws of that state. At that time there was, and still is, in force a statute of that state, providing that no policy should lapse or be forfeited by reason of non-payment, when due, of any premium, interest or instalment, or any failure thereof, unless a prescribed notice is served on the insured at least 15 and not more than 45 days prior to the day when the same is payable. When the second year's premium became due, on September 16, 1896, the insured paid a part in cash, and for the balance gave the defendant his note at six months, which expressly stated that it was given in part payment of the premium, with the understanding that all claims to further insurance, and all benefits whatever, which full payment of the premium in cash would have secured, should be immediately void and forfeited if the note was not paid at maturity; and as a part of the same transaction the defendant gave the insured a receipt for the note, which stated that the policy is in force until September 16, 1897, in accordance with its terms and conditions, provided the above note is paid at maturity. At the maturity of this note on March 16, 1897, the insured paid a further sum in cash on the premium, and for the balance still remaining gave his note at 60 days, containing the same terms and conditions as the first note, and received a similar receipt therefor. This note was not paid at maturity, and the insured never tendered payment

[1] October, 1898, term.          [2] April, 1899, term.

until June 18, when the defendant declined to accept it. Prior to the time the annual premium became due in September, 1896, the defendant seasonably gave the notice required by the New York statute, but it did not give such notice prior to the maturity of either of the notes referred to. On May 26, 1897, the defendant, by letter, referring to the failure of the insured to pay his note which had matured on the 16th of the month, suggested to the insured the expediency of his taking steps to have the policy put in force again, and to have himself reinstated, and expressed its willingness to do so on easy terms. The defendant has never returned the note of the insured which fell due May 16, but it has never attempted to enforce its payment, or asserted any rights under it, nor has its return ever been demanded.

*Held*, construing the contract according to the laws of New York, as interpreted by the highest court of that state, the "premium notice" required by the statute of that state did not apply to the notes; that, having given the notice prior to the time the annual premium became payable in September, 1896, the defendant was not required to give any other notice. Also that, upon the failure of the insured to pay his note at maturity, the policy was forfeited, and became absolutely void, unless such ground of forfeiture was waived by the defendant either by its prior course of conduct or by its subsequent conduct. No declaration of forfeiture was necessary. Also that, upon the facts, there was no such waiver.

Action on a life insurance policy. From an order of the district court for Ramsey county, Brill, J., denying a motion for a new trial after dismissing the action, plaintiff appealed. Affirmed.

On September 16, 1895, the defendant issued a policy of insurance on the life of William Banholzer for $20,000, payable, in the alternative, either to himself in the year 1915, or, in case of his death prior to that time, to his wife, Louisa Banholzer, the plaintiff and appellant herein. The consideration for the policy is the sum of $1,146 to be paid in advance, and the payment of a like sum on the 16th day of every September of each year thereafter during the continuance of the policy until 20 full years' premiums had been paid.

Among the conditions contained in the policy and made a part of the contract of insurance, the following are necessary to be considered upon this appeal:

"If any premium is not paid on or before the day when due, this policy shall become void, and all payments previously made shall remain the property of the company, except as hereinafter provided."

"A grace of one month will be allowed in payment of subsequent premiums after this policy shall have been in force three months, subject to an interest charge at the rate of five per cent. per annum for the number of days during which the premium remains due and unpaid. During the month of grace this policy remains in force, the unpaid premium, with interest, as above, remains an indebtedness to the company, which will be deducted from the amount payable under this policy if the death of the insured shall occur during the month."

The first premium was paid in advance, but when the second became due, and during the one month's grace allowed for its payment, Mr. Banholzer paid $286 in cash, and for the balance gave a note in terms as follows:

"St. Paul, Minn., 9—16, 1896.

Without grace, six months after date, I promise to pay to the order of the New York Life Insurance Company, eight hundred and sixty dollars, at Second National Bank, St. Paul, Minn. Value received, with interest at the rate of five per cent. per annum.

This note is given in part payment of the premium due 9—16—96, on the above policy, with the understanding that all claims to further insurance and all benefits whatever which full payment in cash of said premium would have secured, shall become immediately void and be forfeited to the New York Life Insurance Company, if this note is not paid at maturity, except as otherwise provided in the policy itself.

(Signed)     William Banholzer."

Contemporaneously with the execution of the foregoing note, and as a part of the same transaction, the respondent gave Mr. Banholzer the following receipt:

"St. Paul, Minn., 10—6—96.

Note six months, after date 9—16—96, due 3—16—97, without grace, made by William Banholzer, payable at Second National Bank, St. Paul, Minn. Received from the owner of policy No. 692,-465, $286 in cash, and his note at six months for $860, which continues said policy in force until the 16th day of September, 1897, at noon, in accordance with its terms and conditions, provided the above note is paid at maturity, and this receipt signed by

J. A. Campbell, Cashier."

At the maturity of the note it was delivered up to Mr. Banholzer, who then paid $241.50 in cash, and gave a new note for $639, in terms similar to the preceding note, except that it was payable in 60 days from date. This note was not paid.

Mr. Banholzer was taken sick on May 28, 1897, of a fever, which continued from that time, with intervals of delirium, until July 5, following, when he died.

About two hours after he "had laid down," as stated by Mrs. Banholzer at the trial in the court below, the following letter came:

"New York Life Insurance Company, 346–348 Broadway.

New York, May 26, '97.

Mr. Wm. Banholzer,

690 Stewart St., St. Paul, Minn.

Dear Sir: We have received a report from our branch office returning unpaid the note which was given by you to meet the payment of the overdue premium on your policy No. 692,465.

We regret very much that you did not see your way to meet this note at its maturity, as we are certain that nothing short of an apparent necessity or some misapprehension of fact would compel you to give up your insurance with our company. You are no doubt aware that no other company issues policies which are more liberal in their conditions, or more satisfactory in their results, and we believe it would be very much against your own interest should you fail to do everything in your power to put this policy in force again.

Being a mutual company, we are anxious to do everything possible for the good of the policy holders, and if you will let us know just how much cash you can pay at present we shall take your case under consideration, and you can rest assured that, if it is at all possible to reinstate you on easy terms, we shall have the company do so. Any communication you may make will be treated with the utmost confidence, and we will look for an early reply in the enclosed stamped envelope.     Very truly yours,

Geo. W. Perkins,

3rd Vice President."

On June 18, 1897, through one F. G. B. Woodruff, his attorney, Mr. Banholzer sent a draft for $690, the unpaid balance, with interest, of the premium due 9—16—96, to the home office of the respondent. This draft was returned with the following letter:

"New York Life Insurance Company, 346–348 Broadway.
Mr. F. G. B. Woodruff,
          88 Court Block, St. Paul, Minn.
Dear Sir:   We acknowledge receipt of your letter of the 18th inst. enclosing draft of the Second National Bank of St. Paul, Minn., for $690 on the Western National Bank of New York City, which draft you tender in settlement of the unpaid note of $639, and interest, which note was due May 16th, 1897, accepted in part settlement of the premium due Sept. 16th, 1896, on policy No. 692,465—Banholzer.   As policy No. 692,465—Banholzer—stands lapsed on the books of the company for nonpayment of the note described above, we return herewith the draft forwarded in your letter of above date.   We shall thank you for an acknowledgment of this enclosure.   When writing please refer to this letter by file number.                    Very respectfully,
                              Hugh S. Thompson,
                                   Comptroller."

Mr. Banholzer's application for insurance, which is made a part of the consideration for the policy, and is signed by Mr. Banholzer, provides that the contract of insurance contained in the policy shall be construed according to the laws of the state of New York, the place of the contract being agreed to be the home office of the respondent, which is at city of New York.

At the time of the execution of this contract of insurance there was in force a statute of the state of New York, which provided that:

"No life insurance corporation doing business in this state shall declare forfeited or lapsed any policy hereafter issued or renewed and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year or less, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, interest or instalment or of any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating the amount of such premium, interest or instalment or portion thereof due on such policy, the place where it should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is insured or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known post-office address, postage paid by the corporation or by an officer thereof or person appointed by it to collect such premium, at least fifteen and not more than forty-five days prior to the day when the same is payable.

The notice shall also state that unless such premium, interest or instalment or portion thereof then due shall be paid to the corporation or to a duly appointed agent or person authorized to collect such premium, by or before the date it falls due, the policy and all payments thereon will become forfeited and void except as the right to a surrender value or paid-up policy as in this chapter provided.

If the payment demanded by such notice shall be made within its time limited therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payment and no such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice." Laws 1892, c. 690, § 92.

The notice required to be given by the New York statute above mentioned was duly given by the defendant more than 15 and less than 45 days prior to September 16, 1896, but no such notice was given within the corresponding period prior to the maturity of either the note dated September 16, 1896, or the note dated March 16, 1897, although the ordinary bank notice was given prior to the maturity of each note.

The defendant has never returned Banholzer's note of May 16, 1897, but it does not appear that a return has ever been demanded, or that the defendant has ever attempted to enforce it, or asserted any rights under it; and in its answer it alleges that it retains it merely as evidence of the contract between the parties, and for its own protection.

Proper proofs of death were seasonably served upon the respondent at the home office in New York.

Upon this state of the evidence the action was dismissed at the close of plaintiff's testimony, a motion for a new trial made and denied, and from the order denying plaintiff's motion for a new trial this appeal is taken.

*C. D. & Thos. D. O'Brien* and *F. W. Foot,* for appellant.

Under the facts in this case the company must be held to have waived strict performance of the contract in relation to prompt payment of premiums and notes. Hastings v. Brooklyn, 138 N. Y. 473; Home v. Avery, 85 Ala. 348; Hartford Life A. Ins. Co. v. Unsell, 144 U. S. 439; Mee v. Bankers Life Assn., 69 Minn. 210;

Hartford v. Eastman, 54 Neb. 90; Heaton v. Manhattan, 7 R. I. 502; Appleton v. Phenix, 59 N. H. 541. Therefore the payment of the premium note within a reasonable time after it became due was sufficient. Cotton v. Lester, 62 Ga. 247; Hodsdon v. Guardian, 97 Mass. 144; Union v. Pottker, 33 Oh. St. 459; Meyer v. Knickerbocker, 73 N. Y. 516; Aetna v. Simmons, 49 Neb. 811. Failure to pay the note promptly rendered the continuation of the policy voidable only, and plaintiff was entitled to immediate, plain and positive notice, if the company intended to avoid the policy. Mutual v. French, 30 Oh. St. 240; Thompson v. Insurance Co., 104 U. S. 252; Schreiber v. German Amer. Hail Ins. Co., 43 Minn. 367; Joliffe v. Madison, 39 Wis. 111.

The policy in suit being a New York contract, the defendant was bound to give Banholzer at least 15 days' notice prior to the maturing of the note, before it could declare the policy forfeited for failure to pay promptly. Laws (N. Y.) 1892, c. 690, § 92. See also Baxter v. Brooklyn, 119 N. Y. 450; New York v. Smith (Tex. Civ. App.) 41 S. W. 680; Equitable Life Assur. Soc. v. Trimble, 83 Fed. 85; Symonds v. Northwestern Mut. L. Ins. Co., 23 Minn. 491; Conway v. Phœnix, 140 N. Y. 79.

*Flandrau, Squires & Cutcheon,* for respondent.

Where, by the plain terms of a policy, it is to become void upon nonpayment of the premium according to the express terms of the contract, such nonpayment of itself operates to render the policy absolutely void. See 2 Joyce, Ins. §§ 1103, 1106; Fowler v. Metropolitan, 116 N. Y. 389; Catoir v. American, 33 N. J. L. 487; Ashbrook v. Phœnix, 94 Mo. 72; U. S. v. Ross, 159 Ill. 476. The policy may, however, be revived by a subsequent waiver on the part of the insurer. 2 Joyce, Ins. § 1467; U. S. v. Ross, supra; Ashbrook v. Phœnix, supra.

No declaration of forfeiture is necessary, unless a prior course of dealing has made it necessary. 2 Joyce, Ins. § 1106; Atty. Gen. v. Continental, 93 N. Y. 70; Bouton v. American, 25 Conn. 542; Catoir v. American, supra; Ashbrook v. Phœnix, supra; U. S. v. Ross, supra; Moses v. Brooklyn, 50 Ga. 196. See also Gorton v. Dodge, 39 Wis. 121; Laughlin v. Fidelity, 8 Tex. Civ. App. 448.

The case at bar comes within the principle stated in the following cases: Thompson v. Insurance Co., 104 U. S. 252; Knickerbocker Life Ins. Co. v. Pendleton, 112 U. S. 696; Union v. Chowning, 8 Tex. Civ. App. 455; Baker v. Union, 43 N. Y. 283; Hudson v. Knickerbocker, 28 N. J. Eq. 167; Pitt v. Berkshire, 100 Mass. 500; Kerns v. New Jersey, 86 Pa. St. 171; Fenn v. Union, 48 La. An. 541; especially Holly v. Metropolitan, 105 N. Y. 437. The case at bar must be distinguished from the case of Mutual v. French, 30 Oh. St. 240, where the court, in effect, held that the insurer, having entered into contradictory agreements, must make an election in some unmistakable manner, if it choose to enforce the one and dispute the binding effect of the other.

The premium notice required to be given by Laws (N. Y.) 1892, c. 690, § 92, does not apply to a note given in payment of the premium. Conway v. Phœnix, 140 N. Y. 79. That construction of the statute controls in this case. See Elmendorf v. Taylor, 10 Wheat. 152; Cathcart v. Robinson, 5 Pet. 264; Smith v. Condry, 1 How. 28; Canada Southern Ry. Co. v. Gebhard, 109 U. S. 527.

The burden of proving waiver is upon plaintiff. Ashbrook v. Phœnix, supra; U. S. v. Ross, supra; Lewis v. Phœnix, 44 Conn. 72. The retention by defendant of Banholzer's note of March 16, 1897, is not evidence of a waiver of the right to insist upon absolute forfeiture. See How v. Union, 80 N. Y. 32; Roehner v. Knickerbocker, 63 N. Y. 60; Fenn v. Union, supra; Union v. Chowning, supra.

MITCHELL, J.

(After stating the facts of the case as they are given above). If any regard is to be given to the plain and unambiguous language of the parties, nonpayment of the premium according to the terms of the policy would ipso facto render the policy void, unless there had been some act of waiver on part of the company. No declaration of forfeiture would be required unless rendered necessary by some prior course of dealing. Unless we regard certain dicta in Mutual v. French, 30 Oh. St. 240, as an exception, the authorities seem to be unanimous to this effect in construing policies like the present. This is equally true under the subsequent modifications

of the contract on September 16, 1896, and March 16, 1897, when the assured gave his promissory note for part of the second year's premium. In each instance it was stipulated in the note itself that,

"This note is given in part payment of the premium due September 16, 1896, on the above policy, with the understanding that all claims to further insurance and all benefits whatever which full payments in cash of such premium would have secured, shall become immediately void and forfeited to the New York Life Insurance Company if this note is not paid at maturity, except as otherwise provided in the policy itself."

This exception refers to the "nonforfeitable" provisions of the policy, which in this case had not taken effect. The contemporaneous receipt, which formed part of the contract, says,

"Which continues said policy in force until the 16th day of September, 1897, at noon, in accordance with its terms and conditions; provided the above note is paid at maturity."

If there would otherwise be any doubt as to the construction of the contract of the parties, it is conclusively resolved in this case in favor of the defendant by the decision of the court of appeals in Holly v. Metropolitan, 105 N. Y. 437, 11 N. E. 507.

2. There was no waiver on the part of the defendant of this condition of the policy, either by a prior course of dealing or by its subsequent conduct. The fact that the defendant had granted the insured two extensions of time for the payment of part of the premium which fell due September 16, 1896, gave him no right to assume that the company would grant the third extension on the same premium; and certainly it gave him no right to assume that it would grant him a further extension on different terms, or waive a forfeiture already incurred.

In the transactions of September 16, 1896, and March 16, 1897, the insured paid part of the premium in cash, and gave his note for the balance, while his policy was still in force, but when the last note became due, on May 16, 1897, the insured did absolutely nothing until June 18, 1897,—32 days after his policy was forfeited, unless kept alive by the failure of the company to give another

"premium notice" in accordance with the provisions of the statute of New York.

There is nothing in the semblance of a waiver in the company's letter of May 26 to the insured. A perusal of that letter will show that it assumes that the policy was already forfeited, and has reference solely to bringing about some arrangement by which the insured might be reinstated, and the policy put in force again, on terms to be thereafter mutually agreed upon.

Nor, under the circumstances, do we see anything in the mere retention of Banholzer's note of March 16, 1897, which tended to prove a waiver of a prior forfeiture of the policy, whether the note fell with the policy or whether it remained in force by virtue of the provision that, if the policy became void by reason of the non-payment of any premium "all payments previously made shall remain the property of the company."

3. The next and last contention of plaintiff is that the "premium notice" required by the statute of New York applied to the note which fell due May 16, 1897, and that the policy could not become lapsed or forfeited for the nonpayment of the note without the company giving the prescribed notice of not less than 15 nor more than 45 days prior to the day when the note, by its terms, became payable, notwithstanding the fact that the defendant had already given such notice before the premium became payable the preceding September. Even if the question was res nova, I am clearly of the opinion that, upon the facts, this statutory provision has no application to this note. But, as my brethren do not agree with me in this, it would be useless for me to enter into any discussion of the reasons for my opinion.

The parties mutually agreed that this should be deemed a New York contract, and construed according to the laws of that state. The decisions of the highest court of that state as to the construction of such a contract and of the statutes of New York must, therefore, be accepted as conclusive upon the parties.

In Conway v. Phœnix, 140 N. Y. 79, 35 N. E. 420, upon a state of facts and under a statute which, in our opinion, are in no way distinguishable from those involved in the present case, the court of appeals held that the notice required by statute did not apply to

the notes; that, the company having served that notice before the premium became due, no further notice was required.

Counsel for the plaintiff do not claim that the facts of the two cases are in any respect distinguishable, but they seek to draw a distinction between the language of the statute considered in the Conway case and the statute applicable to the present case. The statute under consideration in the former was Laws (N. Y.) 1876, c. 341, as amended by Laws 1877, c. 321; the statute applicable to the present case is Laws (N. Y.) 1892, c. 690, § 92. This last act appears to be a compilation and revision of all the insurance laws of the state, and section 92 thereof is but an embodiment (with certain amendments) of the provisions of the act of 1876 as amended in 1877. We have compared the language of the two acts, and are unable to discover any difference between them that at all affects the question now under consideration. Even if the "one month's grace" allowed by the policy for the payment of the premium was applicable to the notes (which I do not think it is), that fact would not aid the plaintiff, for the insured did not offer to pay the last note until 33 days after it matured.

Order affirmed.

Appellant having applied for a reargument, on December 21, 1898, the court granted a reargument upon the single question whether the "premium notice" required by the laws of New York applied to the notes given by the insured for part of the premium which became due in September, 1896.

*C. D. & Thos. D. O'Brien* and *Frederick W. Foot*, for appellant.

Giving the notice required by Laws (N. Y.) c. 690, § 92, prior to the maturity of each note was a condition precedent to the declaration of a forfeiture. See Equitable Life Assur. Soc. v. Nixon, 81 Fed. 796, and New York cases cited. From the due date of the premium to the maturity of the note the insurance continued in full force. See Homer v. Guardian, 67 N. Y. 478; Thompson v. Insurance Co., 104 U. S. 252; Michigan v. Custer, 128 Ind. 25.

The question presented in this case did not arise, and was not decided, in Conway v. Phœnix, 140 N. Y. 79. In that case the court

held that the agent had no authority to make the extension agreement for payment of the premium; that the premium note given by the insured had not changed the due date of the premium, and hence it was not evidence of any portion of the premium coming due upon the date of its maturity; and since notice had been given, as required by the statute, before the premium became due, according to the terms of the contract, the conditions of declaring a forfeiture had been complied with.

*Squires & Cutcheon*, for respondent.

The following opinion was filed January 30, 1899:

MITCHELL, J.

Upon the original hearing of this cause, counsel for the plaintiff contended, in his oral argument, that the statute of New York applicable to this case was materially different from that considered in Conway v. Phœnix, 140 N. Y. 79, 35 N. E. 420, but did not suggest that that case and the one at bar were distinguishable in their facts. We therefore inadvertently assumed that he did not claim any such distinction. But, upon our attention being subsequently called to the matter, we discovered that we were in error, and that in his printed brief he did claim that the two cases were distinguishable; and for that reason we granted a reargument of the single question whether the premium notice required by the statute of New York was applicable to the notes which the insured gave for part of the premium which became due in September, 1896.

Upon examination, we are satisfied that the two cases are distinguishable in their facts, inasmuch as in the Conway case the court in the first part of the opinion held that the agent had no authority to grant an extension of time for the payment of the premium, and hence that the deceased was uninsured from the time that he defaulted in the payment of the premium, according to the terms of the policy. Hence the question of notice might have been disposed of on that ground. But we are now equally well satisfied that in what the court said on the subject of notice in the last part of the opinion it intended to and did decide the question upon the assumption that the company was bound by the

agent's acceptance of a time note for the premium.  This is made quite clear to our minds from an examination of the record and briefs in the case, copies of which have been furnished us by counsel for the defendant.  While this shows the views of the court of appeals upon the construction of the statute, the doubt in our minds is whether, under the circumstances, it is a decision of the question which is binding on us.  See Carroll v. Lessee of Carroll, 16 How. 275–287.  We shall not decide that question, as we are satisfied that, if the construction of the New York statute is to be considered as res integra, the notice required by it was not applicable to the notes given by Banholzer for part of the September premium.

The statute was no doubt enacted for the benefit of the insured, recognizing the fact that very often they were people who were neither experts nor systematic in business matters and therefore liable to overlook or forget the due days of their premiums according to the terms of their policies, issued perhaps years before, laid away and seldom examined or referred to.  And, while courts are usually liberal in protecting the assured against forfeitures, this is always done in the interest of justice, and is no reason why any strained or forced construction should be placed upon this statute, which would be unreasonable or operate oppressively upon the insurers or which was not within the legislative intent.  The premiums on life insurance policies are always payable at stated periods, specified once for all in the policy during its life.  They are usually payable yearly, sometimes every six months, and occasionally quarter-yearly.

It seems to us that it was these periodical due days, as fixed in the policy itself, which the legislature had in mind, and to which the statute refers, and not to an extension of time for the payment of a particular premium after it has become due according to the terms of the policy.  These extensions are usually, and probably always, granted at the instance, and for the accommodation, of the insured.  They are always the result of a special and express agreement, which brings the whole matter presently to the mind of the insured.  They are necessarily for a comparatively short time.  They are therefore not within the mischief of the statute, at least not to

any considerable extent. The language of the statute is not very apt, if it was designed to include them, and in practice it would often be impracticable, if not impossible, to apply its provisions to such temporary and special extensions. To do so would often produce some very unreasonable results. For example, if the extension was for only 15 days, the insurer would have to give the insured notice of the date when the extension would expire on the very day it was granted. Every extension, although in terms for one day or for five days only, would, in effect, amount to an extension for at least 15 days. It can make no difference, in principle, whether the extension was for two days or two months, or whether a time note was taken for the overdue premium, or the extension granted in some other way.

For these reasons the opinion heretofore filed is adhered to.

CANTY, J. (dissenting).

I cannot concur in the foregoing opinion. What was said in Conway v. Phœnix, 140 N. Y. 79, 35 N. E. 420, as to the question here involved, is mere dicta. By every sound rule of interpretation, the letter of the statute of New York applies to a case where the time of payment of an instalment of the premium has been extended, and, clearly, such a case is within the spirit of the statute, and notice should be given of the time when the instalment, as thus extended, will fall due. The object of the statute, like that of the usury law, is to protect people from themselves, by preventing them from making foolish contracts. The policy of this law is the same as that of the law which allows a specified length of time in which to redeem from a real-estate or chattel mortgage, and prevents the forfeiture of property rights without notice or warning, which must be given a certain length of time in advance.

It is well settled that the parties for whose benefit those statutes are passed are not allowed to waive the rights given them by the statute, and the courts will not listen to any subterfuge by which the statute is attempted to be evaded. But, according to the decision of the majority, the statute here in question may be evaded merely by extending the time of payment a single day or a single

hour. Surely, extending the time of payment of the instalment of premium, after giving the statutory notice, will waive the notice, and the effect will be the same as if the notice had never been given. Then, the fact that notice was given in this case before the time of payment was extended is wholly immaterial.

There is nothing in the argument that the statute should not be held to apply, because, if it did, an extension for one or two days would amount to an extension for fifteen days. The very purpose of the statute was to prevent people from making contracts which they might have made before its passage, and the law should not be brushed aside merely because it accomplishes this purpose. Suppose a law to prevent the forfeiture of mortgaged chattels on the due day provided that a chattel mortgage should be foreclosed by giving 15 days' notice, to expire on the day the mortgage debt fell due; could it be held that the law did not apply merely because there were only 10 days from the time of the execution of the mortgage to the day the debt fell due? Again, could such a law be evaded by extending the time of payment?

In my opinion, the statute applied, and the order appealed from should be reversed, and a new trial granted.

An appeal having been taken by plaintiff from a judgment of the district court entered therein pursuant to the preceding opinion, the following opinion was filed on April 7, 1899:

PER CURIAM.

This is an appeal from the judgment of the district court for the county of Ramsey, in favor of the defendant and against the plaintiff.

For the reasons stated by this court upon the former appeal herein from an order denying a motion for a new trial, the judgment is affirmed.