### GLOBE & RUTGERS FIRE INS. CO. v. ROBBINS & MYERS CO.

#### (Supreme Court, Appellate Term. June 23, 1904.)

1. APPEAL—SECOND TRIAL—LAW OF CASE.

    Where, after the reversal of a judgment, a second trial was had, without a material change in the proof, the decision on the first appeal constitutes the law of the case.

    MacLean, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by the Globe & Rutgers Fire Insurance Company against the Robbins & Myers Company. From a Municipal Court judgment in favor of defendant, plaintiff appeals. Affirmed.

See 86 N. Y. Supp. 493.

Argued before FREEDMAN, P. J., and MacLEAN and SCOTT, JJ.

Philip Lindsley, for appellant.
Henry Melville, for respondent.

SCOTT, J. Upon a former appeal to this court a judgment in favor of the plaintiff was reversed. No fact of importance was proven upon the second trial that was not before this court on the former appeal. The decision of this court on that appeal, in my opinion, constitutes the law of the case, so far as this court is concerned, and should control our action.

The judgment should be affirmed, with costs.

FREEDMAN, P. J., concurs.

MacLEAN, J. (dissenting). Following a course now spreading into other lines of business, insurance companies long have recognized

the vocation of brokers, and their employment by persons desiring or willing to take out insurance. Though insisting in the contract that brokers are the agents of their employers, the companies, instead of leaving their compensation to their principals, pay the compensation, estimating it as a commission on a liberal basis; adding also the inducement of a deferment of the time of payment for 60 days; carrying this latter, either as a matter of convenience or memorandum or of bookkeeping, or for other reasons, upon their books as a debit to the broker. This anomaly of paying another man's servant or agent has led to confusion in and out of court; confusion not lessened by the divergencies in policies of different companies in different countries and states; policies containing many paragraphs, perhaps, probably not usually perused with care by the insured. To obviate in this state the ill consequences of divergencies in policies of different companies, there was devised and made obligatory (chapter 488, p. 720, Laws 1886) the "standard policy," whose provisions include: "In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company." Before this it had been decided "to be entirely competent for the parties to agree that a third person participating in the negotiations should, for the purpose of procuring the policy, be deemed an agent of the assured." It has been held since by the court of last resort "that there is no reason for relaxing the rules of law in respect to the construction and enforcement of a contract of insurance, any more than there would be in a case of any other kind of contract"; and, later still, "that an insurance company is entitled to have its contract enforced by the courts as written, unless to construe it strictly as against the insured would work a fraud upon him." Russell v. Prudential Life Ins. Co., 176 N. Y. 178, 68 N. E. 252. The insured is bound to know the measure of an agent's authority.

In the case here upon appeal, the defendant some time in 1902, through one Elliot, a broker, whom defendant had employed for many years, sent in an application for a floating policy upon machinery and merchandise. This application Elliot did not transmit directly to the company, but to a broker in New York—one Carroll—with whom he had dealings, and who had dealt with plaintiff; standing on its books in 19 cases. Carroll retained, not to say suppressed, the application, and presented one in his own name, without mention of Elliot. The defendant's application put in by Carroll was accepted, and a policy executed on the 6th of June was, in the usual course of business, delivered to Carroll. Elliot, having received the policy, delivered it to the defendant, which accepted it, and paid the premium to Elliot, which Elliot retained until August 16th—12 days beyond the 60-day period—when he sent to Carroll the premium; retaining three-fourths of the commission allowed thereon, and leaving the remaining one-fourth for Carroll. Carroll kept the entire remittance. The insurance company, the plaintiff, having given indemnity for the term of the policy, brought this action for the premium. As observed by Gray, J., in Conway v. P. M. L. Ins. Co., 140 N. Y. 79, 83, 35 N. E. 420, "the exceptional cases in which recoveries have been permitted in face of the contract have been where there has been such usage or a

course of business or such consent, expressed or implied, as to justify the inference that the insurer had extended the agent's authority, and thus modified the restrictions contained in the policy." So the question arises whether, upon these facts, the payment to Elliot was a sufficient payment to the plaintiff, or an estoppel against recovery therefor from the defendant. The plaintiff had no relations with, or knowledge of, Elliot. He was not its agent to receive the premium; nor was Carroll—at any rate, not after the lapse of the 60-day period. The list of "exceptional cases" would be long. It may be that under Citizens' Fire Ins. Co. v. Swartz, 21 Misc. Rep. 671, 47 N. Y. Supp. 1107, cited by the defendant, this might be considered one, had the payment been made promptly to Carroll by defendant or its agent, Elliot, on the analogy of the right of a purchaser to assume that a messenger instructed with the delivery of goods, and also with a receipted bill, is authorized to take the money; but such agency would terminate with the delivery of the goods, and, if any payment was thereafter to be made, it would have to be made to the seller. So here, the payment not being made to Carroll at the time of delivery of the policy, his implied agency terminated with the delivery.

Judgment should be reversed.