## DREEBEN v. MUTUAL LIFE INS. CO. OF NEW YORK.

Circuit Court of Appeals, Fifth Circuit.
January 17, 1929.

Rehearing Denied February 13, 1929.

No. 5372.

Foster, Circuit Judge, dissenting.

See also (D. C.) 20 F.(2d) 394.

George S. Wright, of Dallas, Tex. (Thompson, Knight, Baker & Harris, of Dallas, Tex., on the brief), for appellant.

Eugene P. Locke and Albert S. Johnson, both of Dallas, Tex. (Locke, Locke, Stroud & Randolph, of Dallas, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Appellant was the beneficiary of an insurance policy on the life of her deceased husband, and brought this suit to recover the face amount of such policy; but the insurance company obtained judgment based on its defense to the effect that the insured, by his failure to pay an annual premium that fell due during his lifetime, had permitted the policy to lapse.

The policy was issued January 1, 1921. It was a "yearly renewable term" policy. The premium was payable annually in advance on the 1st day of January and was increased each succeeding year as the age of the insured advanced, but was not more during any year than the current cost of insurance. The policy therefore had no reserve or cash surrender value, and contained no provision for automatic extension of insurance, or for paid-up insurance. A period of grace of 31 days was provided for in the following language:

"A grace of thirty-one days shall be granted for the payment of every premium after the first, during which period of grace the insurance shall continue in force. If death occur within the period of grace, the overdue premium and any other unpaid premium or premiums necessary to complete premium payments for the then current policy-year shall be deducted from the amount payable hereunder.

"Except as herein provided the payment of a premium shall not maintain this Policy

in force beyond the date when the next premium is payable. If any premium be not paid before the end of the period of grace, then this Policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the Company."

On December 9, 1924, the insurance company mailed the insured a notice, in which it was stated that the policy would become forfeited and void unless the annual premium should be paid on or before January 1, 1925; "subject, however, to any specific agreements as to time of payment or waiver contained in such contract."

The following transactions occurred between the parties during the year 1925: The annual premium due on January 1 not having been paid, the insured, on January 30, made written application for, and was granted, an extension of time until April 1 for payment thereof. The premium for that year was $170.30. The insured was required to pay an extension fee of $42.58, which it was agreed should immediately become the property of the insurance company and should not be considered as payment in full or in part of the premium; but if the premium with interest thereon should be paid within the period of extension, it was provided that the extension fee would be returned to the insured. It was further agreed that, if the premium with interest thereon should not be paid within the period of extension, the policy should be considered as having lapsed on the due date of the unpaid premium. On March 28 a second extension of time until July 1 for payment of premium was applied for, and granted upon the identical terms and conditions agreed upon for the first extension; the insurance company again requiring the insured to pay the sum of $42.58 as extension fee. On June 27 the insurance company advised the insured by letter that the period of extension for the payment of the premium would expire on July 1; that the amount due, including interest, less the extension fees paid, was $88,-21; and that notice was being sent in order that insured might not fail to make payment on or before the date of expiration of the policy. This letter was mailed to the insured at his local address in New York City, which was his last address known to the insurance company. The insured, however, was at that time seriously ill at a sanitarium in Colorado. He mailed a check dated July 2 for $90, payble to the insurance company, to one of its soliciting agents in New York, who, because of absence, did not receive it until the 8th. This agent presented the letter and check

to the home office on the next day. On July 9 the insurance company advised the insured by letter that his check was not received within the extension period, and therefore would not be accepted without satisfactory evidence of his insurability. There was inclosed in this letter the following cashier's memorandum:

"The Cashier acknowledges receipt of check for Ninety Dollars as a deposit, which, if sufficient, may be applied toward reinstatement of Policy No. 2832605 provided the application for the restoration of the policy is approved by the Company. In the meantime the said sum will be deposited and held in suspense subject to your order. If the application for restoration of the policy is not approved, this deposit will be returned.

"In no case shall this receipt be considered as renewing or creating any liability on behalf of the Company under the policy."

The check was deposited by the insurance company in a suspense account. On July 13 the insured by telegram requested the return of his check, and on the next day the company mailed to him its own check for $90, which was subsequently indorsed by him and paid.

There was testimony, although it was not undisputed, to the effect that the insured was too ill to be held responsible for his demand for the return of his check and his acceptance of an equal amount represented by the company's check. Unless the company's acceptance and placing of the insured's check in its suspense account, under the circumstances just above stated, constituted payment, the annual premium due January 1, 1925, never was paid. The insured died on July 31, 1925. The District Court had jurisdiction because of diversity of citizenship, since it appears that at the time suit was brought appellant was a citizen of Texas, and appellee was a New York corporation.

Appellant contends that the policy remained in force on the date of her husband's death, on the grounds: (1) That notice of the maturity of the premium due January 1, 1925, was so indefinite that a forfeiture or lapse of the policy could not be based upon it; (2) that the policy was kept in force by the extension agreements and payment of extension fees until July 1, 1925, and by the period of grace of 31 days until August 1, 1925; and (3) that the insurance company, by accepting the check of the insured for the balance payable on the annual premium due January 1, 1925, upon credit being given for the extension fees, after the expiration of the extension period of six

months, waived the right to claim that the policy had become forfeited or had lapsed for nonpayment of premium.

It is provided by section 92 of the Insurance Laws of New York (Consol. Laws, c. 28) that no life insurance corporation doing business in that state shall declare forfeited or lapsed any policy by reason of nonpayment of any premium after the first, unless a written or printed notice be addressed and mailed to the person whose life is insured at his last known post office address therein at least 15 and not more than 45 days prior to the date when the same is payable. The notice is required to state that, unless the premium be paid by or before the date it falls due, the policy shall become forfeited and void, except as to the right to a surrender value or paid-up policy. It is argued that the notice in this case was insufficient because it stated that the policy would become forfeited and void unless the premium were paid on or before the 1st of January, whereas there could be no forfeiture until the expiration of the period of grace; and that the subject clause protecting specific agreements as to time of payment was indefinite and misleading. We are of opinion that the notice given was sufficient. It stated in the first place that the right of forfeiture would be exercised on the due date of the premium, but it also contained a saving clause which was sufficient to call attention to the protection granted to the policyholder during the period of grace. McCormack v. Security Mutual Life Ins. Co., 220 N. Y. 447, 116 N. E. 74. See, also, Nederland Life Ins. Co. v. Meinert, 199 U. S. 171, 26 S. Ct. 15, 50 L. Ed. 139, 4 Ann. Cas. 480. The New York statute does not require an insurance company to give notice of the expiration of an extension period that is granted for the payment of a premium. Conway v. Phœnix Mutual Life Ins. Co., 140 N. Y. 79, 35 N. E. 420. The same interpretation was placed on the North Carolina statute, which was taken from the New York statute, by the Circuit Court of Appeals of the Fourth Circuit in Philadelphia Life Ins. Co. v. Hayworth (C. C. A.) 296 F. 339. And so it is immaterial that another formal notice requiring payment on penalty of forfeiture was not given at least 15 days before the 1st of July.

The policy in suit, inasmuch as it did not provide for extended or paid-up insurance, could be, according to its terms, kept in force only by the payment of annual premiums. The insured, by paying an annual premium, paid for insurance for only one year. As the last premium paid was for the year 1924, he paid for insurance up to, but not beyond, January 1, 1925. It is true that by reason of the grace provision the policy could not be forfeited until the 1st of February, and that if the insured had died during the grace period, the insurance company would have been liable on the policy; but it is also true that the annual premium for the then current year would have been deducted from the face amount of the policy. The only other effect of the grace provision was to give to the insured the right during the period of 31 days to pay the annual premium then past due, and to keep the policy in force for another year, which he could do without submitting to an examination for the purpose of determining whether he was an insurable risk. The premium for 1925 not having been paid when due, or within the grace period, appellant cannot base her claim for recovery upon the provisions of the policy, but must rely upon the extension agreements. Those agreements did not extend the premium itself, but, on the contrary, extended only the time for payment of premium for six months from the date it was due. In clear, unmistakable language it was provided that the time of payment was extended until the 1st of July, and that if the premium should not be paid on or before that date the policy should be considered as having lapsed on the due date of the unpaid premium. The grace provision of the policy was not incorporated in the extension agreements, and therefore the time for payment was not extended for 31 days beyond the expiration thereof; that is to say, beyond the 1st day of July. Holly v. Metropolitan Life Ins. Co., 105 N. Y. 437, 11 N. E. 507; Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204.

We are therefore constrained to hold untenable the contention of appellant that the policy remained in force until August 1, 1925, which was the day after the insured died. Under the extension agreements, extension fees were not to be considered as payments upon the premium, but became the property of the insurance company. Those fees were to be returned if the premium were paid; but if the premium were not paid within the extension period, as is the case here, then it was provided that the policy should lapse as of the date the premium was due. It therefore cannot be said that the extension fees were accepted in part payment of the premium; they were in fact paid for the

privilege of keeping the policy in force during the extension period. The policy having lapsed by reason of the failure of insured to pay the premium within the extension period, it becomes unnecessary to consider whether the insured by reason of his illness was or was not responsible for demanding the return of his check given in payment of the premium on a date subsequent to the forfeiture of the policy.

Appellee did not waive its right to assert that the policy had lapsed by placing the check of the insured in a suspense account for the purpose of determining whether it would approve an application for restoration of the policy. Gould v. Equitable Life Assurance Society, 231 N. Y. 208, 131 N. E. 892. It clearly appears from the cashier's memorandum that the insured's check was accepted conditionally, and was not to be considered as renewing the policy or creating any liability against appellee. The condition upon which that check was received not having been fulfilled, the return by appellee of the amount it had received was strictly in accord with its cashier's memorandum receipt.

The judgment is affirmed.

FOSTER, Circuit Judge (dissenting). There may be some doubt as to what is the due date of the policy in suit, but the insured was certainly entitled to 31 days' insurance without paying anything for it except interest. A promissory note carrying days of grace would not be due until the last day of grace, and therefore the due date might be construed as being the last of the 31 days of grace granted by the policy. But passing that, the policy was denominated, "Yearly, Renewable, Term." The extension agreement provides for fees equal to certain percentages of the premiums on other forms of policies, but as to term policies the provision is this: "If the policy be a term policy the extension fee shall be the proportionate part of the premium corresponding to the period of extension given." Whatever may be said as to other forms of policies, a reasonable interpretation of the extension agreement is that the contract was amended to allow the payment of a premium for two months at a time. If this interpretation is adopted, the extension did not alter the provision as to 31 days' grace which began to run at the end of the second extension. Under the construction of the majority of the court, the insured is deprived of his days of grace stipulated by the contract. I therefore respectfully dissent.