# ANNA KROKSATHER, Respondent, v. WESTERN UNION LIFE INSURANCE COMPANY, a Corporation, Appellant.

(193 N. W. 48.)

**Insurance — evidence held insufficient to establish waiver by insurer of terms of life policy or estoppel by extension premium note.**

1. In an action on a life insurance policy where the insured failed to pay the annual premium, which was made the subject of a separate contract for extension, and where a note given for the premium provided for fifteen days' grace, and that in case it was not paid on or before the last day of the grace period the policy should immediately terminate, and where, upon acceptance of the note, a receipt was given upon which was stamped the condition stated in the note, it is *held:*

The evidence is insufficient to establish a waiver of the terms of the policy or the conditions of the extension note and insufficient to establish an estoppel.

**Insurance — provisions of premium note and conditional receipt controlling where note not paid within period of grace.**

2. Where a premium is not paid within the time stipulated in the policy, and where within the grace period an extension agreement is entered into, evidenced by a note and a conditional receipt, the provisions of such note and conditional receipt with reference to termination of the policy upon non-payment are controlling.

Opinion filed March 24, 1923.

Insurance, 32 C. J. § 532 p. 1303 n. 13 New; Life Insurance, 37 C. J. § 441 p. 639 n. 48.

Appeal from the District Court of Ward County, *Lowe, J.*

Judgment reversed.

*Greenleaf & Wooledge,* for appellant.

*McGee & Goss,* for respondent.

BIRDZELL, J.    This is an appeal from a judgment in favor of the plaintiff and from an order overruling a motion for judgment non obstante or for a new trial in an action upon a policy of life insurance. By a policy, dated April 24, 1918, the defendant insured the life of Lars Kroksather for three thousand dollars ($3,000), the beneficiary being Anna Kroksather, his wife, the plaintiff in this action. The annual premium of $62.88 was payable on the 24th of April each year,

---

Note.—On grace for payment of premium after maturity of premium note, see note in L.R.A.1917C, 921; 14 R. C. L. 977; 3 R. C. L. Supp. 325; 5 R. C. L. Supp. 790.

and the policy contained the usual provision allowing thirty-one days of grace without interest. The insured paid two premiums, but when the third premium came due in April, 1920, the insured was apparently unable to pay it.

By letter dated May 3, 1920, the insured inquired if his note would be accepted for the premium, writing as follows:

"I notice that my premium was due on April 24, 1920, but as I have not had any crop for three years I am not able to meet my premium at this time. Kindly let me know at once if you will take my note until after harvest, and oblige

"Yours truly,

"Lars Kroksather."

The insurance company acknowledged receipt of this letter and forwarded to the insured for execution a note payable October 24th with 6 per cent interest from April 24th, but before the note was returned to the defendant insurance company and at the expiration of twenty days of grace, the latter wrote the insured (under date May 14, 1920) as follows:

"Our renewal department has just called my attention to the fact that your remittance for $62.88 being the premium which was due April 24, 1920, on your policy, has not yet reached this office.

"No doubt you have this important matter in mind and are taking advantage of the grace period allowed for payment of this premium.

"But my reason for writing you is to assure you that we are looking after your interests here at the Home Office, and therefore want to remind you that twenty days of the grace period have already expired and unless your remittance is received within ten days from the date of this letter, your policy will lapse.

"Of course it is possible to have the policy reinstated, but you would be required to furnish evidence of insurability, and it is possible you would not be in as good health as when you were examined for the policy.

"I therefore want to urge you to send in your remittance *to-day*, so that it will reach us in plenty of time and your insurance may be kept in force.

"You may pay your premium annually, semi-annually or quarterly, whichever is most convenient. Or if there is any way we can assist

you in taking care of the premium do not hesitate to let us know, for we are ready and willing at all times to serve you."

The note, however, was executed and delivered to the defendant within the grace period and a receipt for the premium, countersigned May 20th, was sent to the insured. Stamped across the face of this premium receipt, in red ink and partially indistinct, is the condition that if the note given to extend the time of payment of the premium is not paid as therein stipulated the receipt shall become void and the policy become forfeited except as to the nonforfeiture benefits, if any, and that there shall be immediately due the company the earned portion of the premium as provided in the note. The note was expressed to be due on or before the 24th day of October with 6 per cent interest, and it provided for fifteen days of grace for its payment, and that the policy should remain in full force and effect during the grace period, but if not paid on or before the last day of grace that it should immediately terminate. The note further provided, that in case of its nonpayment and the termination of the policy, there should be immediately due to the company a proportion of the premium for the period the policy was kept in force from the date of the note to the last day of grace. The note was not paid and, on October 29th, the defendant wrote the insured as follows:

"This is to remind you that your note for $64.77 including interest, which was given to extend the time for payment of premium on your policy No. 30684 became due Oct. 24, 1920, and remains unpaid.

"If it is not convenient for you to pay the full amount of the note at this time, you should write us immediately upon receipt of this letter, sending us, if possible, a part payment on the note and tell us when you could probably pay the balance.

"Your note provides for fifteen days of grace, of which five days have already expired, and unless some adjustment is made by November 8, 1920, your insurance will terminate, unless otherwise provided in the terms of your contract.

"We ask you to give this important matter your prompt and serious attention, and assure you that we are at all times ready and willing to assist you in keeping your insurance in force."

The testimony on the part of the defendant is to the effect that it received no answer to the above letter, but on the part of the plaintiff,

that the letter was answered prior to the 8th of November, in which answer assurance was given that the note would be paid as soon as the insured could haul some of his crop to market. The insured was kicked by a horse on November 12th and received injuries from which he died November 16th.

There is evidence to show that a few days after the election in 1920, the insured, with the assistance of his wife, the witness, wrote a letter to the defendant, apprising it of his intention to pay the note when he could market some of his crop; that this letter was taken to town some thirteen miles distant about Saturday (November 6); that the insured was in the postoffice that day, bought some stamps and mailed some letters. The agents of the defendant denied the receipt of any such letter. If it was received there is no evidence that it was ever answered. Appellant contends that by force of the policy provisions, as well as the provisions of the note and the conditions stamped upon the premium receipt, the policy lapsed for nonpayment of the premium at the end of the period of grace, which would be fifteen days after October 24th or midnight November 8th. It further contends that there is no estoppel to invoke the policy provisions and no waiver of their legal effect evidenced by any act of the company. Hence, it is contended, the trial court should have granted the motion for a directed verdict, or after verdict should have granted the motion non obstante.

We are of the opinion that the evidence in this case is altogether insufficient to establish a waiver of the provisions of the policy or any estoppel to rely thereupon. If it be conceded, though we do not so decide, that the evidence of the plaintiff is sufficient to establish the writing of a letter on November 6th, advising the defendant that the premium note would be paid when the insured could market some of his crop, it does not follow, in our opinion, that the policy did not lapse on November 8th. While in the previous correspondence the defendant company had manifested a disposition to be liberal and accommodating in the matter of premium payments, there is nothing in its letters from which it can reasonably be said that the company was committed in advance to any terms that might be satisfactory to the insured or that he might desire or require for his accommodation. Its letter of the 29th of October advised the assured that unless some adjustment were made by November 8th, his insurance would terminate. The clear mean-

ing of this language, in our opinion, is that the insurance would be terminated unless some new agreement between the company and the insured, respecting the payment of the premium, were entered into, and the condition is not satisfied by a mere request for an extension not assented to by the creditor. The previous letter of May 14th, in which the company expressed its general solicitude for the interests of its policy holders, contains no expression which, in our judgment, signifies an assent in advance to an extension of premium payments beyond the time covered by express agreements. This record is entirely devoid of evidence going to prove that the defendant assented to any terms or extension requested by the insured in his letter written on or about November 6th. Under the undisputed facts, the insured was not justified in assuming, if he did assume, that the company would assent to the indefinite extension requested.

The respondent argues that the death of the insured occurred within the grace period. If this contention be sound, it would follow, of course, that the beneficiary could recover without reliance upon either waiver or estoppel. This argument is based upon the following provision of the policy:

"In the payment of all premiums hereunder after the first policy year there will be allowed a grace of thirty-one days, without interest, during which time this policy shall remain in full force and effect."

It is contended that this provision applied to the subsequent blue note transaction operated to give a grace period of thirty-one days after the maturity of the note instead of fifteen days, as provided therein. The note was payable on or before October 24, 1920. In the body of this note, immediately following the promissory obligations and in type uniform in size with that in which the forepart is printed, is the following sentence:

"The payee agrees to allow fifteen days' grace for the payment of this note, and during such grace period the policy herein below referred to shall remain in full force and effect, but if the note is not paid on or before the last day of the grace period, then and thereupon the policy shall immediately terminate as below provided."

The further provisions in smaller type are that the "policy is continued in force until midnight of the last day of grace hereunder and that if the note be not paid on the last day of grace, the policy will auto-

matically, and without notice, become forfeited and void except for the nonforfeiture benefits, if any."

There is additional provision to the effect that such part of the face of the note shall be immediately due to the company as may represent a proportion of the premium, governed by the ratio of the period to the last day of grace compared to the whole time covered by the premium. The stamp upon the receipt sent to the insured upon acceptance of his note was in every way consistent with the conditions stated in the note. We are clearly of the opinion that the grace period stated in the note is controlling. The grace provision in the policy was availed of by the insured to keep it alive during the period he was negotiating for the extension, and in our opinion it means just what it says—that a grace period of thirty-one days is allowed in the payment of all premiums under the policy, during which time the policy shall remain in effect, and that it has no application to any separate or collateral agreement which may provide for a further extension. An extension beyond the grace period in the policy is no part of the policy contract and depends entirely for its effect upon such collateral agreement as may be made controlling it. If, therefore, a policy holder takes the benefit of the delay or extension contracted for in a separate agreement, he is bound to perform the conditions on which it is granted, or to submit to the consequences of the failure to so perform.

See Pitt v. Berkshire L. Ins. Co. 100 Mass. 500; Hudson v. Knicker-bocker L. Ins. Co. 28 N. J. Eq. 167; Banholzer v. New York L. Ins. Co. 74 Minn. 387, 77 N. W. 295, 78 N. W. 244, 84 N. W. 1115; Baker v. Union Mut. L. Ins. Co. 43 N. Y. 283; Kerns v. New Jersey Mut. L. Ins. Co. 86 Pa. 171; 14 R. C. L. 978.

It follows that the grace period had expired at least seven days before the alleged maturity of the policy, and that, as no nonforfeiture benefits had accrued, the policy was automatically terminated.

For the foregoing reasons the judgment appealed from is reversed and the action dismissed.

BRONSON, Ch. J., and NUESSLE, CHRISTIANSON, and JOHNSON, JJ., concur.