## LINCOLN NAT. LIFE INS. CO. OF FORT WAYNE, IND., v. HAMMER et al.

### No. 8623.

Circuit Court of Appeals, Eighth Circuit.

April 19, 1930.

Herbert G. Nilles, of Fargo, N. D., and F. B. Shoaff, of Fort Wayne, Ind. (R. F. Baird and Clyde J. Cover, both of Fort Wayne, Ind., and M. W. Murphy and Aubrey Lawrence, both of Fargo, N. D., on the brief), for appellant.

Francis Murphy, of Fargo, N. D. (W. H. Shure, of Fargo, N. D., on the brief), for appellees.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

Halvor S. Halvorson, a resident and citizen of the state of North Dakota, died intestate on the 24th day of December 1926. Appellee Hammer is administrator of his estate; the remaining appellees are his widow and children. November 24, 1922, appellant, a life insurance company of Fort Wayne, Ind., and a citizen and resident of that state, issued to the deceased a five-year term policy of life insurance by which, in consideration of an annual premium of $213, it agreed to pay, subject to certain conditions and stipulations, and upon proof of death of the insured, the sum of $15,000 to his estate. Among other things, this policy provided that, if the annual premium accruing should not be paid when due, nor within thirty-one days thereafter, said policy should lapse, become null and void, and of no legal effect. The policy also contained the following reinstatement clause:

"Should this policy lapse it may be reinstated at any time upon the insured furnishing evidence of insurability satisfactory to the Company and paying all premium arrears with interest at six per cent per annum compounded annually."

The premium on said policy of $213 which fell due on November 24, 1925, was not paid;

and on or about November 25, 1925, the insured applied to and requested of appellant an extension of time for the payment of said premium; at the same time he executed a certain agreement, in writing, subject to approval by appellant, which was submitted to appellant at Fort Wayne, Ind., and was there accepted by it. This agreement was in the following terms:

"Nov. 25, 1925.

"On or before February 24, 1926, for value received, I promise to pay to the order of The Lincoln National Life Insurance Company, at its Home Office in Fort Wayne, Indiana, Two Hundred Thirteen and No/100 Dollars, with interest at the rate of six per cent per annum from December 24, 1925.

"This note, together with ...... Dollars in cash, is tendered to said Company by the maker upon the understanding and agreement that it shall not be binding upon the maker until it is accepted by the Secretary or an Assistant Secretary of said Company, and if and when accepted, such acceptance shall be upon the following express agreement, to-wit:

"That although the ...... annual premium due on the 24th day of November, 1925, on Policy No. 115466 has not been paid, the insurance thereunder shall be continued in force until midnight of the due date of this note. That if this note is paid on or before the date it becomes due, or within fifteen days thereafter, such payment, together with said cash, if any, will then be accepted by the Company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due. That if said Company, in its discretion, should hereafter extend the time of payment of this note or if in its discretion it should hereafter accept any payment on this note less than the full amount due hereon, and in consideration thereof, extend the time of payment of this note, such extension and/or payment shall not be considered as a payment upon any premium due under said policy, unless and until payment in full of the amount due under this note, with interest, shall have been received on or before the expiration of such extension or within fifteen days thereafter, and such part payment, if accepted, and/or extension if granted, shall have no effect except as stated in the extension agreement or receipt for such payment then issued by the Company. That if this note is not paid on or before the date it becomes due, or within fifteen days thereafter or within fifteen days after the expiration of any extension hereof, it shall thereupon automati-

cally cease to be a claim against the maker and said policy shall become void and shall be deemed to have ceased and terminated on the date when said premium was due and payments thereon forfeited, except as to the right to a surrender value, or a paid-up policy or other rights as in the policy provided on and from the day when said premium became due, and said Company shall retain said cash, if any, and/or any part payment on this note, if accepted, as a part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash, if any, and/or any part payment on this note, if accepted, had not been paid, nor this agreement made. That said Company has duly given every notice required by its rules, or by the laws of any state in respect to said premium, and in further compensation for the rights and privileges hereby granted, the maker hereof has agreed to waive, and does hereby waive, every other notice with respect to said premium or this note, or any extension thereof, it being well understood by the said maker that said Company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms.

"$213.00
"Form No. 391
    "Name ...............................
    "Address ...........................
    "Name Halvor S. Halvorson..........,
    "Address ..........................."

This so-called "blue" note was not paid on or before the period of extension, nor within fifteen days thereafter. Appellant at once forwarded to the insured notice that his policy had lapsed, and offered him opportunity for reinstatement as follows:

"Dear Sir:

"Your Policy No. 115466 has lapsed for non-payment of the premium note due February 24, 1926.

"We cannot believe you desire to lose the protection this policy has afforded you and your dependents, and therefore we now offer you the opportunity to reinstate it. The application for reinstatement on the reverse side of this letter may be used if you act promptly. It will not be necessary for you to consult a physician in filling out this form, your own signed statements will be sufficient. If your application indicates that you are in an insurable condition satisfactory to the company, the Policy will be reinstated upon payment of the past due premium with interest.

"If it is impossible for you to remit the full premium with your application for reinstatement, send us such an amount as you are able to, advising us when you can remit the balance. We will undoubtedly be able to take care of it in a manner satisfactory to you.

"We await your reply with interest.
"Very truly yours,
                "E. A. Schmallen,
                        "Cashier."

Halvorson immediately executed the form inclosed to him, and forwarded it to appellant at Fort Wayne, Ind. It reads thus:

"Application to the
"Lincoln National Life Insurance Company
    "Home Office, Fort Wayne, Indiana
"For reinstatement of Policy No......which lapsed on the...... day of ...... 19..,

"I hereby apply for the reinstatement of the above numbered Policy and, for the purpose of obtaining this reinstatement and as a basis of such reinstatement, I make the following statements and I represent to said Company that, since the issuance of this Policy, there has been no change in my customary occupation nor deaths in my immediate family from tuberculosis; that no application for life insurance or for the reinstatement of life insurance has been made without the issuing or reinstating of such insurance; and that no application for insurance on my life is now pending:

"(If there is any exception to the above, write it out here fully)
...........................................

"I further represent that I am now in good health and of temperate habits and that since the date of issuance of this Policy I have had no injury, ailments, nor illness, neither have I consulted a physician for any cause except as noted below:
...........................................

"Illness or injury   Date   Physician and his address
...........................................

"I agree that I have stated all exceptions to the above statements and that, if at any time within two years any of the statements herein shall be found to be untrue in any respect, the Company shall have the right to declare null and void and of no effect the reinstatement of said Policy, if granted by the Company upon this Application.

"I also further agree that this Policy shall not be considered reinstated until this Application shall be approved by the Company at its Home Office, and that any pay-

ment of premium made by me in advance shall not be binding upon the Company until this Application is so approved. If said Policy is not reinstated, I agree to accept the return of all advance payments in connection with this Application without interest and to surrender the receipt received for such sums.

"Dated at Cooperstown this 16 day of March, 1926.

"Halvor S. Halvorson
"Signature of Applicant.

"H. J. Kolstead
"Witness"

As stated, the insured died in the following December. The physician who attended the deceased in his last illness certified that the cause of death was "Uraemic Coma-Nephritis." In answer to the question, "When did health first become impaired?" the physician answered: "1 yr. ago following after pneumonia then got the Flue & this Nephritis followed." This certificate was executed January 14, 1927. The record contains the testimony of two physicians, who attended deceased in October and November, 1925, that he was then suffering from pneumonia, following influenza; that there were expectorations of blood, severe cough, rales in the lungs, shortness of breath, temperature, and rapid pulse. One of the same physicians attended him in a professional capacity on March 19, 1926, but three days after he signed his application for reinstatement. An examination in July, 1926, disclosed a systolic blood pressure of 240, declared very excessive in a man of his age; there were also pronounced symptoms of Bright's disease. October 20, 1926, Halvorson suffered a stroke of paralysis, affecting his speech and his right arm and leg. In short, the testimony showed conclusively that he had suffered severe illnesses, and had consulted physicians on divers occasions since the issuance of his policy; and that he was not in good and insurable health on March 16, 1926, all in sharp conflict with the statements in his application for reinstatement.

■ Prior to the commencement of this action appellant tendered to the administrator the annual premiums paid upon and after reinstatement, together with accrued interest, with notice that it had elected to cancel and rescind the policy of insurance, and demanded a return thereof. Said appellee refused to accept the money and to surrender the policy, and this suit was filed February 25, 1927. October 25, 1927, the beneficiaries in the policy began suit against appellant to recover thereon. On final hearing the District Court dismissed this cause for want of equity. We shall first consider the question of equity jurisdiction thus presented. The general rule is thus stated by this court in Smith v. American National Bank, 89 F. 832:

"A case may be sustained in equity on a legal right if the object and nature of the remedy sought are equitable, or where, though the right may be clear at law, a court of law is not able to afford so complete, adequate, or efficient and practical a remedy as a court of equity."

The rule thus announced has been adhered to and restated in numerous succeeding decisions. It accords with the views of the Supreme Court many times expressed.

"It is a settled principle of equity jurisprudence that, if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. * * * Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." Davis v. Wakelee, 156 U. S. 680, 688, 15 S. Ct. 555, 558, 39 L. Ed. 578; Union Pacific R. Co. v. Board of Com'rs of Weld County, 247 U. S. 282, 285, 38 S. Ct. 510, 62 L. Ed. 1110; Dawson v. Kentucky Distilleries Co., 255 U. S. 288, 296, 41 S. Ct. 272, 65 L. Ed. 638.

■ In Bank of Kentucky v. Stone et al. (C. C.) 88 F. 383, it is held that a remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party. To preclude suit in equity the remedy at law must be as prompt, certain, and efficient to attain the ends of justice as that afforded by equity. Investors' Guaranty Corporation v. Luikart (C. C. A. 8) 5 F.(2d) 793. In an action to cancel an insurance policy for fraud it was held that the application of this rule depends upon conditions, and may be invoked when there are any circumstances which indicate that the remedy at law will not be "as practical and efficient to the ends of justice and its prompt administration." Mutual Life Insurance Co. v. Pearson (C. C.) 114 F. 395, 398.

■ It is established by the great weight of authority, and in most jurisdictions, that the contest contemplated by the incontestable clause in an insurance policy must be initiated by an appropriate action brought, or by a pleading filed in a suit pending, within the time limited in said clause. We have accordingly held that:

"Where insured in policy incontestable two years after issuance died within such time, and policy had been assigned, insurer was entitled to maintain suit in equity for cancellation on ground of fraud, and to enjoin action by beneficiary pending determination thereof." Peake et al. v. Lincoln National Life Insurance Co. (C. C. A. 8) 15 F.(2d) 303.

█ It is believed that this right is now very generally recognized. The bill must be viewed in the light of the circumstances existing when it was brought. The jurisdiction in equity is not lost because an adequate legal remedy has become available since the bill was filed. Peake et al. v. Lincoln Nat. Life Insurance Co., supra; Dawson v. Kentucky Distilleries Co., supra.

█ The cancellation of the policy in suit is prayed because of alleged fraudulent representations made in the application for reinstatement. If, then, the rules of law which obtain with respect to incontestable clauses in policies are applicable here, jurisdiction in equity cannot be declined. The policy, as issued, contained an incontestable clause, the material parts of which follow:

"This policy * * * shall be incontestable after two years from date of issue, except for the non-payment of premium."

The provision in the reinstatement application reads thus:

"If at any time within two years any of the statements herein shall be found to be untrue in any respect, the company shall have the right to declare null and void and of no effect the reinstatement of said policy, if granted by the company upon this application."

Appellees contend that this is not an incontestable clause, and was not intended to prevent the insurer from contesting the validity of the contract of reinstatement at any time and in any tribunal of competent jurisdiction. Accordingly, they submit that the bill presents no special circumstances which render the legal remedy inadequate. Without expressly deciding the legal effect of the language employed in the application, we find it sufficient to point out that the cases which have dealt with similar situations throw much doubt upon the adequacy of appellant's remedy at law after the expiration of the two years expressly limited in that application. It is true that this court has decided that after a life policy has ceased to be in force because of nonpayment of a premium, an agreement for reinstatement is a new contract. Wastun v. Lincoln Nat. Life Insurance Co. (C. C. A.) 12 F.(2d) 422. But in Great Western Life Insurance Co. v. Snavely (C. C. A. 9) 206 F. 20, 46 L. R. A. (N. S.) 1056, it is held that where the policy provided that the contract should be incontestable after one year from date of issue, and where the death of insured occurred more than a year after reinstatement, "whether the reinstatement constituted a new contract or a renewal of the old, the terms of the policy were the terms of such contract, and the incontestable clause precluded any defense by the company to an action thereon, on the ground of misrepresentation or false statements in the certificate for reinstatement." Mutual Life Insurance Co. v. Dreeben (D. C.) 20 F.(2d) 394, is authority for the statement that an incontestable clause in the policy applies to representations made in the application for reinstatement. Cases cited holding similar views are: Massachusetts Life Ass'n v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; Teeter v. United Life Ins. Ass'n, 159 N. Y. 411, 54 N. E. 72; McCormack v. Security Mutual Life Ins. Co., 220 N. Y. 447, 116 N. E. 74; Pacific Mutual Life Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862; and many others.

These courts do not all place their conclusions upon the same grounds, and in many, if not all of them, it does not appear that the reinstatement application itself contained a time limit, as in the case before us. The incontestable clause in the reinstated policy is, therefore, generally relied upon to bar action after the expiration of its time limit. In our judgment, the language in the reinstatement application under consideration adds at least further doubt and uncertainty to the adequacy of appellant's remedy at law. It would seem that that language was intended to, and did, carry out the spirit of the policy contract, by limiting the period, within which the insurer might take advantage of misrepresentations made, at most to two years from the date of the application for reinstatement. No other interpretation accords with reason. If the insurer, under such a provision, should delay action for rescission and cancellation until the expiration of the two-year period, it would most certainly be met with the defense of limitation, and there is strong reason to anticipate that this defense would be entertained, especially in view of the rule that, the provision being obviously for the benefit of the insured, its meaning and effect, if doubtful, should be construed in his favor.

For the reasons stated we think jurisdiction in equity was established.

Review of the merits may best be conducted by a consideration of the contentions of appellees.

█ 1. It is insisted that there was in the first instance no forfeiture of the policy because of the application of section 6518, Compiled Laws of North Dakota 1913. That section reads as follows:

"No such policy of insurance shall by virtue of any condition or provision thereof be forfeited, suspended or impaired for nonpayment of any note or obligation taken for the premium, or any part thereof, unless the insurer shall, not less than thirty days prior to the maturity of such premium, note or obligation, mail, postage prepaid, to the assured at his usual post office a notice, stating:

"1. The date when such note or obligation will become due.

"2. The amount of principal and interest that will then be due.

"3. The effect upon the policy of nonpayment.

"4. Such notice shall further inform the assured of his right at his own election either to pay in full and keep the policy in full force, or to terminate the insurance by surrendering the policy and paying such part of the whole premium as it shall have earned and must further state the amount which the assured is lawfully required to pay, or which on account of previous payment may be due him in case of his election to terminate the insurance on the day of the maturity of the premium, note or obligation."

The word "such," at the outset, remits us to the preceding section to ascertain what sort of policy is meant. Section 6517 defines the policy under consideration thus:

"The holder of any policy of insurance against loss or damage to property by fire or other casualty, etc."

It is the position of appellant that the provision for notice in section 6518 is confined to property insurance and has no application to life policies. Appellees base their contention upon the fact that these sections are contained in a chapter entitled "Insurance in General," and that section 6460a thereof provides that "all kinds of insurance are subject to the provisions of this chapter." We incline to agree with appellant's contention. These sections were first enacted by the territorial Legislature as sections 1 and 2, chapter 69, Laws of 1887, with the title "Cancellation and Forfeiture of Insurance Policies." They have been carried through the Revised Codes of 1899, 1905, and 1913 in juxtaposition and without verbal change. It is true that the provisions of the present Civil Code have general application to all kinds of insurance, but it can scarcely be said that provisions which are in terms confined to fire and casualty insurance may thus arbitrarily be extended to some wholly unrelated form. If it had been the intention of the Legislature to give general application to section 6518, it seems reasonable that the restrictive word "such" would have been eliminated. There are, however, other and cogent reasons why this section should not control the instant case. It is a cardinal principle in insurance law that prompt payment of premiums is the life of insurance contracts and that the companies must have effective means of enforcing it, Klein v. Insurance Co., 104 U. S. 88, 26 L. Ed. 662; otherwise premiums will not be punctually paid, Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204; New York Life Ins. Co. v. Slocum (C. C. A. 3) 177 F. 842.

█ "Under the rule of the federal courts, failure to pay at maturity a note given for a past-due premium on a life insurance policy, containing a provision for forfeiture in such case, works an absolute forfeiture of the policy." Reed v. Bankers' Reserve Life Ins. Co. (C. C.) 192 F. 408.

Time is the essence of the agreement.

"A stipulation in the policy, in a note for the premium, or in any other instrument which evidences the contract of insurance or a part of it, that the insurance shall be void if the premium is not paid on the agreed day, is conscionable, valid, and enforceable." Manhattan Life Ins. Co. v. Wright (C. C. A. 8) 126 F. 82; Lefler v. Life Ins. Co. (C. C. A. 8) 143 F. 814.

█ Such is the general attitude of the courts upon this question. Of course the national courts will adopt the construction by the state courts of a state statute, as evidencing the policy of the state in that regard, Iowa Life Ins. Co. v. Lewis, supra; but statutes in derogation of the common law, and abridging rights of contract, should not be extended beyond the limits of their legitimate application.

"Promptness of payment of life insurance premiums is essential and although forfeitures are not generally regarded with favor they are necessary and should be fairly enforced in regard to such payments. A statute requiring notice of time of payment of premium and effect of non-payment thereof

should not be construed so as to make it a trap for either the company or the assured." Nederland Life Ins. Co. v. Meinert, 199 U. S. 171, 26 S. Ct. 15, 50 L. Ed. 139, 4 Ann. Cas. 480.

The purpose of such statutes is to prevent a forfeiture by the nonpayment of the premium when due, because of inadvertence and forgetfulness. Id., loc. cit. 179 of 199 U. S., 26 S. Ct. 15.

It will be noted that the North Dakota statute provides that "no such policy of insurance shall by virtue of any condition or provision thereof be forfeited," etc. The forfeiture here declared was not "by virtue of any condition or provision" of this policy. The forfeiture was based upon the conditions of the extension agreement and the blue note forming an integral part thereof. This was an Indiana and not a North Dakota contract. The test is the place where the last act was done by either of the parties essential to a meeting of the minds. Wastun v. Lincoln National Life Ins. Co. (C. C. A. 8) 12 F. (2d) 422, 425. And the law of the place where the contract is made governs. By the express terms of the extension agreement the minds did not meet until it was accepted by appellant at Fort Wayne, Ind. But, in any event, the insurance company was not required to give notice of the expiration of the extension period granted for the payment of this premium. New York has a similar statute and its courts so hold. Conway v. Phœnix Mutual Life Ins. Co., 140 N. Y. 79, 35 N. E. 420; Dreeben v. Mutual Life Ins. Co. (C. C. A. 5) 29 F.(2d) 963.

The North Carolina statute was taken from the New York act, and has received the same construction. Philadelphia Life Ins. Co. v. Hayworth (C. C. A. 4) 296 F. 339.

However, we think the point is settled by the Supreme Court of North Dakota in Kroksather v. Western Union Life Ins. Co., 49 N. D. 619, 193 N. W. 48. It is there held that:

"Where a premium is not paid within the time stipulated in the policy, and where within the grace period an extension agreement is entered into, evidenced by a note and a conditional receipt, the provisions of such note and conditional receipt with reference to termination of the policy upon nonpayment are controlling."

This statement exactly fits the circumstances of the case at bar. The body of the opinion states the proposition thus:

"An extension beyond the grace period in the policy is no part of the policy contract and depends entirely for its effect upon such collateral agreement as may be made controlling it. If, therefore, a policy holder takes the benefit of the delay or extension contracted for in a separate agreement, he is bound to perform the conditions on which it is granted, or to submit to the consequences of the failure to so perform."

This ruling of the Supreme Court of North Dakota is in accord with that of the Supreme Court of the United States in New York Life Insurance Co. v. Dodge, 246 U. S. 357, 38 S. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593, which holds that a law of a state, governing a life insurance contract, made locally between a resident citizen and a locally licensed foreign corporation, cannot be extended so as to prevent the policy holder and the company from making and carrying out a subsequent independent agreement in the company's home state, pursuant to its laws. That such an attempt, to graft the law of the policy upon the subsequent contract, is an invasion of the citizen's liberty of contract under the Fourteenth Amendment and cannot be sustained. See, also, Slocum v. New York Life Ins. Co., 228 U. S. 364, 371, 33 S. Ct. 523, 57 L. Ed. 879.

While appellant did not give the thirty days' notice provided by the North Dakota statute, and was not required to do so, it did give a reasonable notice of the time when payment would be due under the extension agreement, and that the policy would be declared forfeited unless payment were made. That due date, including fifteen days of grace, was March 11, 1926. Notices were mailed to the insured on February 15, and again on March 1, 1926. Thus the purpose of such notice, to "prevent a forfeiture by nonpayment of the premium when due because of inadvertence or forgetfulness," was substantially observed. This point is ruled in favor of appellant.

2. The blue note, or so-called extension agreement, was an Indiana and not a North Dakota contract. By its terms it was not to be binding upon the maker until accepted by the officers of appellant company. It is stipulated that it was thus submitted to appellant at Fort Wayne, Ind. Thus it was in Indiana that the last act was done essential to a meeting of the minds of the parties. Wastun v. Lincoln National Life Ins. Co., supra. The statutes of both North Dakota and Indiana require that the policy, including the

application therefor, shall constitute the entire contract between the parties. For this reason appellees insist that the extension note and agreement, to be valid, should have been attached to the policy. This was not done. Statutes of this nature have properly been held to refer only to the contract of insurance as originally made. "The statute does not state that the policy shall continue to be the sole contract between the parties. It refers to the policy that is originally issued." Wastun v. Ins. Co., supra. Subsequent contracts between the parties are frequently made and held to be enforceable in accordance with their terms. Kroksather v. Life Ins. Co., supra; New York Life Ins. Co. v. Dodge, supra. The contention that the extension agreement and note should have been attached to the policy is without substance or merit.

3. Appellees next claim that the application for reinstatement contained no representations of any kind. This contention is based upon the assumption that that instrument is in question and answer form, and upon the fact that the blanks following each statement were left unfilled. The form of the application refutes this claim. In it the physical conditions essential to the insurability of the applicant are set out in the form of affirmative statements, the blanks being left for the insertion of exceptions, if any existed. Signing the instrument without such exceptions, vouched for the truth of those statements and constituted positive representations as to matters therein contained.

4. The falsity of these representations was established largely by the testimony of physicians who attended the insured during the periods covered. A North Dakota statute (Comp. Laws 1913, § 7923, subd. 3) provides that, "A physician or surgeon cannot, without the consent of his patient, be examined as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." Appellees invoke the privilege thus created. But this privilege may be waived, and "when waived by a clause in an application for life insurance, such waiver is binding on the beneficiary." Judge Thayer in Adreveno v. Mutual Reserve Fund Life Ass'n (C. C.) 34 F. 870. In Halvorson's application the following waiver is found:

"I hereby expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended me, or who may hereafter attend or examine me, from disclosing any knowledge or information thereby acquired by him and I expressly authorize such physician to make such disclosures. Signed this 20th day of Nov. 1922."

Appellees contend that this waiver applies only to the policy itself, and not to anything connected with the separate contract of reinstatement. It will be perceived, however, that its broad terms do not permit of such a limitation. Furthermore, the reinstatement application represents that the insured had not consulted a physician for any cause since the date of issuance of the policy. Testimony of a physician that he has been so consulted is not privileged under this statute as construed by the Supreme Court of North Dakota, since information necessary to enable the physician to prescribe for the patient is not called for nor invoked. Booren v. McWilliams, 26 N. D. 558, 145 N. W. 410, Ann. Cas. 1916A, 388. See, also, Missouri Pacific Ry. Co. v. Castle (C. C. A. 8) 172 F. 841; and Travelers' Ins. Co. v. Bergeron (C. C. A. 8) 25 F.(2d) 680, 58 A. L. R. 1127.

It is clear that the statements made in the application were false and known to be false by the applicant. The testimony offered to that effect was competent and material. In our opinion the trial court erred in dismissing the suit for want of equity, and it follows that the decree must be reversed, and the case remanded with directions to enter a decree in accordance with the views herein expressed. It is so ordered.