[File No. 6696.]

FRED ROTT, Respondent, v. PROVIDENT LIFE INSURANCE COMPANY, a Corporation, Appellant.

(298 N. W. 17.)

Opinion filed May 8, 1941.

*C. L. Young* and *Sullivan, Fleck & Sullivan,* for appellant.

*Murray & Murray,* for respondent.

GRIMSON, District J. The plaintiff brings this action upon a life insurance policy issued by the defendant insurance company on the 21st day of June, 1929, and effective as of September 27th, 1926, upon the lives of the plaintiff and his wife, Lydia, payable to the survivor for $5,850, conditioned on the payment of an annual premium of $275.01, in advance, on the 27th day of September each year. The policy contains certain guaranteed nonforfeiture values and benefits, including extended insurance.

It appears that this policy was issued as a reinstatement of one half of a former policy of $11,700 dated September 27th, 1926. The reduction had been made at the request of the plaintiff and because of his inability to keep up the payments of premiums on the larger policy. The plaintiff's wife, Lydia Rott, died November 8th, 1931. The plaintiff claims to have made payment of premiums sufficient to keep the policy in force under the extended insurance provision. This the defendant denies and claims that the policy lapsed long before.

This case is before this court for the third time. Each time the verdict has been for the plaintiff. The first time judgment was reversed because of the erroneous admission in evidence of a memorandum of payments made by the plaintiff from the claimed oral ad-

mission of an officer of the defendant as to what was contained in its books. Rott v. Provident L. Ins. Co. 67 N. D. 529, 274 N. W. 849. On the second appeal the judgment was reversed on account of the uncertainty in the instructions concerning the payment of premium when effected by a note, which remained unpaid. Rott v. Provident L. Ins. Co. 69 N. D. 335, 286 N. W. 393.

Now error is alleged in the admission of testimony relating to payments of premium prior to the date of this policy, June 21st, 1929, and in instructions covering such evidence. It is claimed by the defendant that the new policy, receipt, and note issued on that date constituted a complete novation and that, therefore, no evidence of prior negotiations or payments leading up to that contract is admissible.

One of the provisions of the new policy, however, is that it should become effective as of September 27th, 1926, and that an annual premium of $275.01 must be paid in advance on the 27th day of September each year thereafter. In effect it is the same policy as originally issued, even to bearing the same number, except the amount is reduced one half. The defendant in its letter of June 21st, 1929, refers to it as follows: "We are in receipt of your policy No. 17232, which has been reduced to $5,850 insurance and which we return together with receipt for cash and note which takes care of premiums to October 27, 1929, which is the date of the maturity of the note."

This new policy is in reality a continuation of the original policy, containing the same proportional values, and bearing the same premium rate per $1,000 of insurance. In this case there was and is no dispute as to the amount that the insured was required to pay to keep the new policy in force. The original policy became lapsed, and there was an application for reinstatement of the policy, but for a reduced amount. This is a common practice among life insurance companies. Some of the companies evidence the reduction by appropriate indorsement on the original policy; others issue a new policy for the reduced amount, making the effective date the same as the former policy, as the defendant company did in this case. The result in either case is the same.

The receipt and the note executed at the time of the issuance of the new policy are not a part of the contract, Kroksather v. Western U. L.

Ins. Co. 49 N. D. 619, 193 N. W. 48, but merely evidence of payments under the terms of the contract and of a collateral agreement regarding the payment of that specific premium. That such was the understanding of defendant is indicated in the above quotation from its letter. The oral evidence offered by the plaintiff on the matter of payment does not alter the terms of the written contract, which is the new policy itself. The promissory note was executed and delivered as a part of an agreement outside the policy, whereby the insurer granted to the insured an extension of time to make cash payment of the premium. It did not change the provisions in the policy as to payment of premiums, the period of grace in making payments, or the consequences of nonpayment, they remained precisely as they were. The stipulations in the note as to the effect of nonpayment are no different than they would have been if the extension of payment had been granted and the note made in connection with premium payments accruing long after the policy had been executed and delivered. Every promissory note is evidence of an indebtedness and constitutes a contract on the part of the maker to pay the same according to the terms thereof. But the parol evidence rule does not preclude the maker from showing that there was in fact no consideration, that the consideration failed or was inadequate, or other similar facts which have the effect of establishing that the maker does not owe, and is under no legal obligation to pay, the amount stipulated in the note.

The insurance contract did not stipulate what had been paid by the insured; it stipulated what must be paid to keep the insurance in force. The note was a separate agreement. It was an acknowledgment of indebtedness by the plaintiff to the defendant and a promise to pay the same. But the plaintiff was not precluded by the parol evidence rule from showing that he had actually paid the debt for which the note was given. If instead of giving a note, plaintiff had given a check for a like amount, and subsequently had recollected that he had paid the premium in cash, it would hardly be contended that the check, taken either by itself or together with the insurance policy, would preclude plaintiff from showing that he had paid the premium and did not owe the amount for which the check was given.

The plaintiff does not seek to avoid his agreement with the defendant relating to insurance. He and the defendant are in full accord as

to the terms of that agreement. He did not seek to contradict or vary that agreement; he sought to show that he had in fact paid the premiums stipulated in the insurance contract to the defendant, and that it had retained the same, and that as a result the policy was in force when the loss occurred. There was no prejudicial error in the admission of testimony or in the instructions.

On all three appeals the defendant has claimed that the evidence was insufficient to sustain the verdict. It has always claimed that the plaintiff's evidence of payments in excess of what it admits is unbelievable. Plaintiff claims he paid to the defendant $278.01, for which he has received no credit. Defendant denies that such payments were made.

The record shows a clear dispute as to whether such payments were made. On the one hand there seems to be no reason to doubt that the defendant believes that no such payments were made, and that if it had been satisfied such payments had been made it would have paid the loss. On the other hand the plaintiff evidences a conviction that he made the payments, which he claims to have made. It is argued by defendant's counsel with much force that there are strong circumstances tending to support defendant's version of the position that such payments were not made. However, the positive testimony of the plaintiff is to the contrary. The weight of the evidence was for the jury. Where there is a conflict in evidence, the judges may not substitute their judgment on the weight of evidence for that of the jury. The testimony of the plaintiff was not unbelievable as a matter of law (Jacobson v. Mutual Ben. Health & Acci. Asso. ante, 566, 296 N. W. 545), and it was for the jury to determine whether the plaintiff or the defendant was correct in their respective contentions.

On both former appeals it was contended by the defendant that the evidence was insufficient to sustain a verdict for the plaintiff, and that the defendant was entitled to a dismissal as a matter of law. This court did not sustain this contention, but remanded the case for retrial because of errors of law in the admission of evidence and in the instructions. This time there was no error in the admission of evidence or in the instructions, and the disputed questions of fact were fairly tried. The jury determined these questions in favor of the plaintiff; i. e., they believed the story of the plaintiff and rejected the contrary

one presented by the defendant. This is further emphasized by the special questions submitted by the court to the jury. These questions were directly on the payments in dispute and in each case were answered in favor of the plaintiff.

On the first appeal, we said: "If the amounts shown . . . were actually paid, they were sufficient to keep the policy in force long enough so that continued insurance provided for in the policy would have kept it in effect up to the date of the death of Lydia Rott." 67 N. D. 532, 274 N. W. 850.

This has never been seriously disputed, and has become the law of the case. The payments here shown, and which the jury specifically found were made by the plaintiff, are the identical payments referred to in the first decision.

It must be borne in mind that three juries and three different judges who presided at the trials have found in favor of the plaintiff on the sufficiency of the evidence. The verdict has substantial support in the evidence and is therefore binding on this court.

Affirmed.

MORRIS and CHRISTIANSON, JJ., concur.

BURKE, J. (concurring specially). I concur in the disposition which has been made of this case in the opinion filed by Judge Grimson. I am of the opinion, however, that the reinstatement of the policy sued on was accomplished by a new contract. Under the terms of the original policy, the insurance contract could be reinstated after lapse, only in its original amount. Here the reinstatement was for one half of the amount of the original policy. In order to accomplish this result it was essential that there be an agreement between the parties in addition to that contained in the original policy or in other words a new contract.

The new contract was made and there is no dispute between the parties as to the terms of that contract. The lapsed policy in the sum of $11,700 would be surrendered. As to half the policy and half the premiums paid thereon the forfeiture was to be confirmed. A new policy in the sum of $5,850 identical with the old policy in number, date, policy provisions and rate of premium per $1,000 of

insurance was to be issued. The insured were to be credited with half the premiums they had paid upon the lapsed policy to pay the premiums upon the new policy and were to pay, in addition, such sum as would be necessary to carry the new or reinstated policy until September 27, 1929. Under this agreement the total amount which it was necessary for the insured to have paid, to pay the premiums upon the new policy from September 27, 1926 to September 27, 1929 was the sum of four semiannual premiums of $143.01 each, and one annual payment of $275.01 or $847.05.

In the performance of this contract, according to the findings of the jury, the defendant gave the insured credit for half of the premiums paid on the lapsed policy or three semiannual premiums of $143.01 each and a partial payment of $43 for the fourth semiannual period. The balance of the premium for the fourth semiannual period was paid by crediting thereto $100.01, which the insured had paid to the defendant in June, 1928, but which had never been applied to the payment of premiums upon the lapsed policy. To pay the premium of $275.01 for the third policy year, the insured paid $170.04 in cash and gave a note in the sum of $104.96 for the balance, under a premium extension agreement.

In this action the plaintiff contended, and the jury found the contention to be correct, that in the performance of the contract of reinstatement, the parties overlooked $278 which the insured had paid to the defendant in December 1928, after the original policy had lapsed.

At the trial, the defendant objected to the introduction of any evidence of payments made by the insured prior to the date of reinstatement upon the ground that such evidence tended to vary the terms of the contract of reinstatement. I think that the objection was properly overruled. The evidence did not tend to vary the terms of that contract. In fact there never has been any dispute between the parties at any time during the whole course of this litigation as to what the terms of the contract were. The dispute has not been over the contract but over what was done in the performance of the contract.

According to the jury's verdict, when plaintiff's note in the sum of $104.96 became due, the defendant had in its possession $278 of the insured's money for application upon the premiums due on this policy.

It was the defendant's duty to apply that money to the payment of premiums in order to prevent a forfeiture. 29 Am. Jur. pp. 351, 352, Insurance. The amount in defendant's hands was suffcient to pay the premium note and leave more than enough to pay another semiannual premium. And with respect to this policy the defendant had made a practice of accepting premiums either on an annual or semiannual basis. The policy therefore should be considered to have been in force until March 27th, 1930. So considered the automatic extended term insurance which became effective upon the policy's lapse would have extended well beyond the date of the death of Lydia Rott. Plaintiff was therefore entitled to recover.

BURR, Ch. J. (dissenting). This is the third appearance of this case in this court. On the first appeal (67 N. D. 529, 274 N. W. 849) the sufficiency of the evidence was not reviewed, a new trial having been granted because of error in the admission of evidence. At the second hearing (69 N. D. 335, 286 N. W. 393) the sufficiency of the evidence was not reviewed, the new trial being granted because of errors in the instructions.

The real issue is one of law rather than of fact; and so far as this case is concerned, I hold that the statement of law as set forth in the first section of the syllabus is erroneous.

So far as the complaint is concerned, you will search it in vain to find any reference whatever to the so-called "original" life insurance policy, or any reference to any reinstatement of the same. The complaint alleges that on the 21st of June, 1929, "the defendant, in consideration of the payment to it of an annual premium of $275.01, made, executed and delivered to the plaintiff its policy of insurance, wherein and whereby it insured the life of one Lydia Rott, and the plaintiff, in the sum of $5,850, payable to either the plaintiff or Lydia Rott, depending upon who survived the other, and further promised and agreed to pay the plaintiff or the said Lydia Rott within sixty days after notice and proof of death of either the said plaintiff or the said Lydia Rott; that said policy was so dated on the 21st day of June, 1929, but became effective as of September 27, 1926, by virtue of an agreement between the plaintiff and the defendant, which agreement was indorsed upon said policy; that said policy contained the

usual, customary and standard provisions, and bears serial No. 17232; that said policy is made a part of this complaint with the same force and effect as if same were fully set out herein."

The complaint then proceeds to state that the policy contained the standard and usual automatic extended insurance provisions in accordance with certain tables set forth in the policy; that one of the insured died on November 8, 1931; that three years' premiums had been paid in full; that the policy was in force at the time of her death; but that "since the 27th day of October, 1929, a dispute existed between the defendant and the plaintiff as to whether or not there was a default . . . the defendant taking the position that the policy lapsed on the 27th day of October, 1929;" and that such dispute existed up to and including the time of the death of Lydia Rott; that on October 27, 1929, the defendant attempted to declare forfeiture and so notified the plaintiff "and thereafter refused to accept any payment or tender of payment of the defendant's alleged claim of additional premiums to be due;" that there was no default on January 5, 1931, but that the plaintiff tendered to defendant the additional premiums; that *"the plaintiff offered and tendered to the defendant any additional premium that the defendant might claim to be then due on said policy;"* and that this was refused unless "satisfactory evidence of insurability of the said Lydia Rott" would be furnished by the plaintiff.

The defendant, in the answer, sets forth an alleged statement regarding the negotiations which led up to the issuance of the policy in question, introducing the old policy.

The undisputed facts show that on September 27, 1926, the defendant issued to the plaintiff and his wife, Lydia Rott, a joint policy of insurance on the lives of both, in the amount of $11,700, the semiannual premium on said policy being $286.01, payable in advance. On this policy there were paid the semiannual payments due September 27, 1926; March 27, 1927; and September 27, 1927. By reason of these payments, the policy was in force until March 27, 1928. When the fourth semiannual payment became due, the insured were unable to pay, and negotiations were had with the Company, which resulted in the insured paying in April, 1928, the sum of $86.01; and plaintiff gave his note to the Company for $200, with interest at 6 per cent, the note being due on September 1, 1928.

This note expressly stipulated that it was neither given nor accepted as a payment of the premium, but that the insurance should remain in force until the maturity of the note; but if the note was not paid by the date of maturity, the policy would ipso facto lapse, and all rights and benefits of the parties to the policy would be the same as if the note had not been given. The note was not paid, and a short time after its maturity, was returned to the plaintiff. The policy for $11,700, therefore, lapsed as of the date of March 27, 1928.

While the policy lapsed as of the date of March 27, 1928, because of the nonpayment of the note, it must be kept in mind that the insured had protection under that policy up to and including September 27, 1928. This was in accordance with the agreement stated in the note. In other words, he had six months' protection for which nothing was paid, except the sum of $86.01.

It is not claimed that the defendant could not have obtained judgment for the $200 and interest according to the note. It furnished the consideration. Instead of doing this, defendant returned the note. It is quite clear from the evidence that up to that time the parties considered all transactions ended and all rights of the insured had ceased, except such right as was set forth in the policy itself providing for reinstatement. The provision for reinstatement is as follows: "Reinstatement Privilege: At any time after default in payment of any premium hereon, or after any nonforfeiture or surrender value option, except cash surrender value, herein given, shall have been taken, this policy may be *reinstated to its original form and amount on payment to the Company of arrears of premiums and by payment or reinstatement of whatever indebtedness to the Company existed hereon at the date of default, with interest on such premiums and indebtedness* at the rate of 6 per cent per annum from the date of such default; provided, that such reinstatement shall require evidence of insurability of both of the Insured satisfactory to the Company. The first year's insurance under this policy is joint term insurance."

In other words, the only right that was remaining to the insured on this policy was a right to have the policy reinstated "to its original form and amount" by the payment of all arrears of premiums and all indebtedness, with 6 per cent interest, and the furnishing of the re-

quired proofs. We are not interested in the portion dealing with satisfactory evidence of insurability of plaintiff and wife.

We do not know the exact date when the plaintiff began the negotiations with the Company which culminated in the policy involved in the lawsuit. It is undisputed that through some transaction with the First National Bank, money was available to the plaintiff in case reinstatement could be made.

The plaintiff found that he could not comply with the reinstatement provisions. He could not carry the amount of the original policy, nor pay arrears of premiums with interest; and so he asked the defendant for the privilege of reinstating for half the amount. Under his contract he could not compel the defendant to reinstate for half the amount. In order to have this done, consent of the defendant would have to be obtained.

The reinstatement provision required the payment of all the amount that was due the defendant on the original policy, with 6 per cent interest. Had the policy been kept in force, the defendant would have received the semiannual premiums due March, 1928 (less the $86.01 paid), the semiannual premium of $286.01 due September 27, 1928, and the semiannual payment of $286.01 due March 27, 1929, and 6 per cent on all of the unpaid premiums. This is what the defendant had the right to demand under the reinstatement provision of the contract, and this is what the plaintiff would have been required to pay to compel reinstatement. It was a financial impossibility for him to do this, and he asked the defendant to issue him a new policy for one half of the amount. The first thing, therefore, was to determine under what terms would the defendant issue the new policy as of the old date, and how much would plaintiff be required to pay to adjust their differences; and it is here where these alleged payments, which the jury said were made, appears as an important factor.

There is a dispute between the parties as to how much the plaintiff had paid when he turned over the money available through the First National Bank; but, whatever amount he paid, he was paying, not to reinstate his policy, but to reinstate a portion of it under a sit-

uation wherein the defendant had a right to refuse to do so, and had a right to insist on payments of all arrears up to date.

There is no claim of fraud, misrepresentation, or deceit. The only claim the plaintiff makes appears to be that in making this new deal with defendant, he overlooked some payments he had already paid the company. He does not claim that this mistake came through any misstatement of the Company. He knew he was asking the Company to surrender certain rights which it could have enforced before a reinstatement could be made. It is very reasonable to assume no new policy would have been issued had plaintiff claimed such payments at the time of the negotiations. The Company had surrendered its note for $200, although it had given plaintiff protection, and the parties agreed that a new contract would be issued for half of the amount, dating this new contract as of the date of the original policy upon the express condition that the plaintiff would pay, in addition to all moneys already paid, an annual premium of $275.01 as of the premium date of September 27, 1928. That is, he was to pay $275.01 as of the date of September 27, 1928, and the same amount annually thereafter.

This the plaintiff knew at the time the negotiations for this new policy were completed. He knew how much he paid; he knew how much he owed; and he must be presumed to know what the Company had a right to require of him. All of this condition was in existence in June, 1929. The negotiations culminated in an entirely new contract. This the plaintiff recognized, because he found himself unable to pay the premium that was due September 27, 1928. All he claimed to have available at that time, and all he paid was $170.04, but he gave his note to the defendant for the remainder of the premium—$104.96, getting a receipt for the cash paid.

This note was dated December 20, 1928, and was due October 27, 1929. After reciting that the maker promised to pay to the defendant $104.96 at its Home Office, with interest at 6 per cent from the date of the note, without grace, the note states that this note was "the amount of the premium due and payabe the 27th day of September, 1928, on Policy No. 17232 in said Company; interest to be computed from the date of note.

"I understand and agree that neither this note, nor any extension thereof, is given or accepted as a payment of said premium; that the insurance under such policy shall remain in force until the maturity of the note; that if the note is paid on or before the day of its maturity, the payment so made will be accepted as payment of such premium, and the rights under the policy shall then be the same as if said premium had been paid when due; that the nonpayment of this note or any extension thereof at maturity shall ipso facto lapse said policy. If at the time of such default in payment said policy shall be entitled to any nonforfeiture benefits, the amount of this note and interest thereon to due date shall operate to reduce said benefits in the manner and to the extent provided by the terms of said policy applicable when the same is subject to indebtedness.

"This note is accepted by the Company only upon the request of the maker, and upon his consent to the conditions thereof."

This note was not paid on maturity, and thereafter was returned to the plaintiff with a statement dated December 12, 1929, as follows:

"We are returning herewith your note which was not paid on the date due resulting in the lapsation of the above policy. We were glad to extend this courtesy and the nonpayment of the note has naturally caused us considerable expense and loss.

"We are sorry, indeed, to lose you as one of our valued policyholders, and should you find it possible to reinstate your policy within a reasonable length of time, we will give it prompt consideration, and assure you of the same business-like, courteous treatment that we have endeavored to extend in the past."

The plaintiff clearly acquiesced in this decision, and this statement of facts shows with certainty that this new policy is a novation.

Section 5829 of the Code provides: "Novation is the substitution of a new obligation for an existing one." There was an existing one, based upon the plaintiff's right to insist upon the reinstatement privileges, and in place of the old obligation the parties substituted a new one. The general terms were similar, the date was the same, and the number was the same, but certainly the obligation of the plaintiff was a new one—it was only one half of what he was required to pay— and it certainly was a substitute for the old contract and its terms.

Section 5830 of the N. D. Compiled Laws 1913, provides in subdi-

vision 1 thereof that a novation may be made "By the substitution of a new obligation between the same parties with intent to extinguish the old obligation." Certainly it was intended the old obligation was extinguished, and all the rights thereunder extinguished.

Section 5831 provides: A novation "is subject to all the rules concerning contracts in general." Among those "rules concerning contracts in general" is the rule set forth in § 5889 that "the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

As set forth in International L. Ins. Co. v. Mowbray (C.C.A. 7th) 22 F. (2d) 952, the old policy could be revived only by the consent of the defendant upon the application of the insured, together with the required evidence of insurability. "The reinstatement being discretionary . . . the reinstated policy was a new contract."

The amount of insurance desired was one half of the original. The reinstatement was a matter of contract, and this new contract was possible only as a result of the new negotiations.

In Union Mut. L. Ins. Co. v. Mowry, 96 U. S. 544, 547, 24 L. ed. 674, 675, the court was considering the effect of conditions that were alleged to exist before and at the time of the issuance of the contract of insurance, the beneficiary seeking to present these to uphold his suit against the Company on the policy of insurance. In disposing of this claim, the Supreme Court of the United States says: "The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was there expressed, for the very purpose of avoiding any controversy or question respecting them. The entire engagement of the parties, with all the conditions upon which its fulfillment could be claimed must be conclusively presumed to be there stated."

The policy and the note are parts of the contract, and therein it is clearly stated, and the plaintiff clearly contracted and agreed, that the premium for the year beginning September 27, 1928, was not paid in full, and gave his note for the agreed balance. No attempt was made to reform the contract, and as pointed out in this case cited, "If, by inadvertence or mistake, provisions other than those intended

were inserted . . . the parties could have had recourse for correction of the agreement. . . . But, until thus corrected, the policy must be taken as expressing the final understanding of the assured and of the Insurance Company."

And this is but right, for it is quite probable that had the parties not so agreed at the time the new contract was entered into, the contract for reinstatement of a portion of the old contract in its present form would not have been made, and it is quite possible no reinstatement of any portion would have been made.

In Alper v. New York L. Ins. Co. (D. C.) 41 F. (2d) 956, it is shown clearly that when "Alper failed to pay his premium at the stipulated time or within the grace period provided by the policy," his policy lapsed. "The contract was at an end. Liability under it had wholly ceased. The policy could be revived only by consent of the defendant. By virtue of the terms of the original policy, a new written application was required, together with 'evidence of insurability satisfactory to the Company,' before reinstatement could be made. A new contract was possible only as a result of new negotiations."

The policy in issue here required similar action on a reinstatement privilege, and specified that "this policy may be reinstated to its original form and amount on payment to the Company of arrears of premiums and by payment or reinstatement of whatever indebtedness to the Company existed hereon at the date of default, with interest on such premiums and indebtedness at the rate of 6 per cent per annum from the date of such default; provided, that such reinstatement shall require evidence of insurability of both of the Insured satisfactory to the Company."

As analogous to the case cited, the insured in the case at bar were to pay interest on the overdue payment, and make the past due payments. Plaintiff offered to do this, and so the transaction had all the elements of a contract—offer, acceptance, and consideration. As stated in this Alper Case cited, "The new contract effected, as disclosed by this record, was a contract for the continuance in force of the policy originally issued (in this case one half of the policy). It was a contract for the revival or reinstatement of a precedent contract."

In Kroksather v. Western U. L. Ins. Co. 49 N. D. 619, 193 N. W. 48, we held: "Where a premium is not paid within the time stipulated

in the policy, and where within the grace period an extension agreement is entered into, evidenced by a note and a conditional receipt, the provisions of such note and conditional receipt with reference to termination of the policy upon nonpayment are controlling."

In the case at bar, the original policy had lapsed. Whatever were the negotiations leading up to a reinstatement of a portion of the policy, and whatever were the financial relations between the parties, the fact remains that a new contract was made specifically stating the conditions upon which the new policy would exist. A new agreement was entered into. This was "evidenced by a note and a conditional receipt," and, therefore, "the provisions of such note and conditional receipt with reference to termination of the policy upon nonpayment are controlling."

In Wastun v. Lincoln Nat. L. Ins. Co. (C. C. A. 9th) 12 F. (2d) 422, it is expressly set forth that "after a life policy has ceased to be in force, because of nonpayment of a premium, an agreement for reinstatement of the policy is a new contract."

The plaintiff is not attacking the new policy on the ground of fraud. It was agreed then that under this new contract an annual premium was payable September 27, 1928, and that in order to make this payment, and to give the contract validity, the plaintiff was required to give, and did give, this note for $104.96. Such note is a part of the contract, particularly where the receipt states on its face that it is subject to the terms of the contract, and the note so states.

In Iowa L. Ins. Co. v. Lewis, 187 U. S. 335, 47 L. ed 204, 23 S Ct 126, the court states in effect:

"A notice upon the back of a premium receipt, that if a note is given for payment of premium, and is not paid at maturity, the policy shall determine, constitutes a part of the contract of insurance, where such receipt states on its face that it is subject to the terms of the contract and the conditions on the back, which the assured is directed to read.

"A policy of life insurance is forfeited, without any affirmative action on the part of the insurance company, by the failure to pay at maturity a note given for the payment of the premium, which was accepted on the condition that if not paid at maturity the policy shall 'cease and determine.'"

The note for $104.96 not having been paid, the first annual premium on this new contract was never paid, and, therefore, the policy lapsed according to the terms of the contract expressed in the policy, the receipt, and the note.

There is no pretense of tender of any premium after June 27, 1929, even though the complaint so alleges. Plaintiff's entire case is based upon the proposition that at the time the new policy was issued, he had paid more than the defendant admits. He does not claim he paid the note, nor does he claim that he ever tendered any payment on the note.

It was error on the part of the court to admit testimony regarding any alleged payments made prior to the time that the new contract was in fact agreed upon, that is, June, 1929. All of these negotiations were merged in the new contract. If there was any claim of fraud or misrepresentation or deceit practiced upon the plaintiff, we would have a different situation.

Lydia Rott did not die until November, 1931, almost two years and a half after the note was given, and almost two years after it had been returned to plaintiff.

The plaintiff sues, claiming rights under the policy which was the fruit of the negotiations, that is, under the novation, but he does not pretend that he ever paid the note.

The majority opinion quotes from 67 N. D. 532, 274 N. W. 849, on the theory that "the law of the case" has been established by the verdict of the jury. This is not the issue here. The issue is whether, in the absence of any claim of fraud, misrepresentation, or deceit, all of the negotiations prior to the issuance of this new contract were merged in the contract, and whether the plaintiff can now go back behind these negotiations. To permit this, even if he be correct in his testimony, and the jury found he was, we are compelling the defendant to be bound by a contract which it never entered into, and by agreements which it never made, for it must be conceded the contract as made did not contemplate that any other alleged payment was to be credited to the plaintiff.

The majority opinion states: "The receipt and the note executed at the time of the issuance of the new policy are not a part of the contract . . . but merely evidence of payments under the terms

of the contract and of a collateral agreement regarding the payment of that specific premium," citing Kroksather v. Western U. L. Ins. Co. 49 N. D. 619, 193 N. W. 48, supra, but this decision as applied in the majority opinion is not pertinent to the case at bar. In this Kroksather Case the note and receipt were issued with reference to a premium due several years after the policy was issued. A policy had been issued in April, 1918, and the premiums were paid until the premium of April 24, 1920, was due, at which time the insured gave a note and obtained a receipt with reference to the premium in default. Of course, the note and the receipt were no part of the policy when issued. As stated in the opinion of the court, they were a part of a separate agreement regarding the extension of time of payment of a premium due some years after the contract was made.

This is not the situation here. The parties entered into a new deal; they discussed all of their rights and privileges; they came to an agreement which was merged in this new deal, consisting of the new contract, the note, and the receipt. All of the rights of the parties were centered in this new contract, of which the receipt and note were a part. The judgment, therefore, should be reversed and the action dismissed.